Filed 6/28/12

# IN THE SUPREME COURT OF CALIFORNIA

UNITED TEACHERS OF LOS ANGELES, )
            )
    Plaintiff and Appellant,     )
            )      S177403
     v.          )
            )    Ct.App. 2/5 B214119
LOS ANGELES UNIFIED SCHOOL    )
DISTRICT,          )
            )    Los Angeles County
    Defendant and Respondent.   )   Super. Ct. No. BS116739
_____ )

    After the Los Angeles Unified School District (District) approved the conversion of an existing public school into a charter school, the United Teachers of Los Angeles (UTLA) filed a number of grievances claiming that the District failed to comply with provisions of the collective bargaining agreement that concern charter school conversion. Unable to resolve the grievances informally, UTLA sought to compel arbitration pursuant to the collective bargaining agreement. The District argued that the collective bargaining provisions regulating charter school conversion were unlawful because they conflicted with the statutory scheme for creation and conversion of charter schools. Accordingly, the District urged, arbitration of those unlawful provisions should not be compelled.

    The trial court agreed and denied UTLA's petition. But the Court of Appeal reversed, concluding that it was not for the court, on a petition to compel arbitration, to decide whether there was a conflict between the collective bargaining provisions and the charter school statutes. Instead, the Court of Appeal held that the court's function in adjudicating a petition to compel arbitration was limited to determining whether there

was a valid arbitration agreement that had not been waived. Because that was the case here, the court ordered the petition to be granted. The District claims this ruling was erroneous.

We conclude that a court faced with a petition to compel arbitration to enforce collective bargaining provisions between a union and a school district should deny the petition if the collective bargaining provisions at issue directly conflict with provisions of the Education Code — that is, if they would annul, replace, or set aside Education Code provisions. We further hold that, under the Education Code, an arbitrator has no authority to deny or revoke a school charter, as UTLA requests. Nevertheless, we express no view on whether the collective bargaining provisions cited in UTLA's grievance are necessarily in conflict with the Education Code. As explained below, UTLA has not identified with sufficient specificity which collective bargaining provisions the District allegedly violated. We thus remand this case to the trial court to give UTLA an opportunity to identify those specific provisions, and to allow the parties to address whether the provisions so identified conflict with the Education Code.

## I.

On May 11, 2007, Green Dot Public Schools filed a charter petition with the District Board of Education. The petition sought to convert Alain Leroy Locke High School (Locke High School) to a charter school. The board granted the charter school petition on September 11, 2007.

On May 9, 2008, the UTLA, a union representing Los Angeles teachers and certificated support personnel, filed a petition to compel arbitration pursuant to a written collective bargaining agreement. The petition alleged that UTLA had exhausted the preliminary steps of the grievance process in Article V of the collective bargaining agreement and was submitting the matter to arbitration pursuant to the same article. Article V, section 1.0 of the collective bargaining agreement defines a grievance as "a

2

claim that the District has violated an express term" of the collective bargaining agreement.

UTLA's grievance alleged that the District had violated Article XII-B of the collective bargaining agreement, which sets forth procedures for converting a school to a charter school. Article XII-B states in part, "The primary purpose of this Article is to mitigate the potentially disruptive effect upon employees assigned to schools which are converting (or considering converting) to independent charter status." Article XII-B, section 2.0 sets forth the District's obligations to UTLA and to school employees in processing a conversion charter petition. Article XII-B, section 3.0 requires disclosures by a charter school operator to employees of a proposed charter school. These provisions are discussed in greater detail below.

Specifically, UTLA's grievance alleged that the District had violated sections 2.0 and 3.0 of Article XII-B in connection with the Locke High School charter conversion by failing (1) to present the complete charter to employees; (2) to give affected employees and the community a reasonable opportunity to review and discuss the plan; (3) to give the union a copy of the proposed charter for review; and (4) to clearly and fully disclose the conditions of employment within the charter school. The District refused to arbitrate the controversy, prompting UTLA's petition to compel arbitration.

The District opposed the union's petition. Relying upon *Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 277-288 (*Round Valley*), the District argued that UTLA's grievances could not be arbitrated because the collective bargaining provisions that UTLA sought to enforce conflict with Education Code section 47611.5, subdivision (e), which provides that the approval of a charter school petition shall not be controlled by a collective bargaining agreement. Further, the District argued that Article XII-B of the collective bargaining agreement is invalid because it requires the District to take procedural steps beyond what is required under Education Code section 47605. (All further statutory references are to the Education Code unless otherwise indicated.)

3

Citing *Round Valley,* the trial court denied the petition to compel arbitration, essentially agreeing with the District's arguments. The Court of Appeal reversed. Relying on *California Correctional Peace Officers Assn. v. State of California* (2006) 142 Cal.App.4th 198 (*California Correctional Peace Officers*), the court held that its inquiry was limited to whether there was a valid arbitration agreement that had not been waived, and it found that there was such an agreement here. The court interpreted *Round Valley* to stand for the proposition that courts may vacate an arbitration award in conflict with the Education Code, not that courts may decline to order arbitration. Thus, the Court of Appeal held that the collective bargaining agreement's arbitration provision should be enforced and that the alleged conflict between the collective bargaining provisions on charter school conversion and the Education Code should be decided in the first instance by the arbitrator. We granted review.

The resolution of this appeal requires us to address two arguments made by UTLA. First, UTLA argues that the question of whether the collective bargaining provisions on charter school conversion conflict with the Education Code is irrelevant to determining whether to grant a petition to compel arbitration. Like the Court of Appeal, UTLA contends that courts faced with a petition to compel arbitration should ask only whether there is a valid arbitration agreement that has not been waived, and not whether the underlying claim to be arbitrated has merit. Second, UTLA argues that, in any event, the collective bargaining provisions at issue do not conflict with the Education Code.

## II.

In defining a court's role in ruling on a petition to compel arbitration to enforce a collective bargaining agreement between a school district and its employees, we are required to resolve a tension between two principles: (1) collective bargaining provisions in conflict with the Education Code are unenforceable, and (2) courts generally do not examine the merits of the underlying dispute in deciding whether to enforce arbitration agreements.

4

## A.

In reconciling these principles, our analysis begins with *San Mateo City School Dist. v. Public Employment Relations Bd.* (1983) 33 Cal.3d 850 (*San Mateo*), a case arising from disputes in several school districts regarding their obligation to bargain with employee unions under the Educational Employment Relations Act (EERA). As we explained: "The EERA establishes a system of collective bargaining for employees of public school districts educating students in grades kindergarten through 14. It was enacted in 1975 (Stats. 1975, ch. 961, § 2, p. 2247, operative July 1, 1976; codified as [Gov. Code,] §§ 3540-3549.3). The Act requires the school district employer to meet and negotiate in good faith with the duly selected exclusive representative of its employees as to subjects within the statutorily defined scope of representation. (§§ 3543.3, 3543.5.) The parties may enter into a binding agreement (§ 3540.1, subd. (h)), and they may agree that disputes involving interpretation, application or violation of the agreement will be resolved through binding arbitration (§§ 3548.5, 3548.6, 3548.7). The employer must negotiate in good faith and must submit to mediation and advisory fact-finding when an impasse in negotiations is determined to have been reached. (§§ 3548-3548.3.) But the final decision as to the terms of the negotiated agreement, including those matters within the scope of representation, is reserved to the employer. (§ 3549.)

"The purpose of the EERA is set forth in section 3540: 'to promote the improvement of personnel management and employer-employee relations within the public school systems in . . . California by providing a uniform basis for recognizing the right of public school employees to join organizations of their own choice, to be represented by such organizations in their professional and employment relationships with public school employers, to select one employee organization as the exclusive representative of the employees in an appropriate unit, and to afford certificated employees a voice in the formulation of educational policy.' " (*San Mateo*, *supra*, 33 Cal.3d at pp. 855-856.)

5

One of the issues in *San Mateo* was the relationship between the EERA and the Education Code, and specifically the meaning of Government Code section 3540's statement that "[t]his chapter [pertaining to the EERA] shall not supersede other provisions of the Education Code . . . ." In *San Mateo*, we adopted the view of the Public Employment Relations Board (PERB) that this clause of section 3540 — sometimes called the "non-supersession clause" — prohibits negotiations when "provisions of the Education Code would be 'replaced, set aside or annulled by the language of the proposed contract clause.' . . . 'Unless the statutory language [of the Education Code] clearly evidences an intent to set an inflexible standard or insure immutable provisions, the negotiability of a proposal should not be precluded.' " (*San Mateo*, *supra*, 33 Cal.3d at pp. 864-865.)

Elaborating on this framework, the court in *San Mateo* considered the school districts' argument that "some parts of the Education Code exhibit a legislative intent to fully occupy the field to which they pertain thereby denoting that the Legislature also clearly intended to preclude collective negotiations and agreements in the same field. Where such statutory schemes are involved, a contract proposal may be in conflict without 'annulling' the statute, and negotiations should be prohibited. [¶] The primary example offered is those sections establishing a scheme for the layoff of classified employees. (Ed. Code, §§ 45101, subd. (g), 45114, 45115, 45117, 45298, and 45308.) Another example would be found in Education Code sections 45113 and 45116, pertaining to causes and procedures leading to disciplinary action." (*San Mateo*, *supra*, 33 Cal.3d at p. 866.) We agreed with the school districts that "these particular statutes mandate certain procedures, protections and entitlements for classified employees who are to be laid off or disciplined. The intent of section 3540 is to preclude contractual agreements which would alter these statutory provisions. [¶] Where statutes are mandatory, . . . a contract proposal which would alter the statutory scheme would be nonnegotiable under PERB's application of section 3540 because the proposal would

6

'replace or set aside' the section of the Education Code." (*Ibid.*) On the other hand, where collective bargaining on a subject regulated by the Education Code "would not supersede the relevant part of the Education Code, but would strengthen it," bargaining is permitted. (*Ibid.*)

We applied the *San Mateo* framework to arbitration in *Round Valley*, where we vacated an arbitration award reinstating a probationary teacher who had not been reelected (i.e., permanently retained). Although the district had not followed the due process and just cause provisions of the collective bargaining agreement, we concluded that those provisions were unenforceable because they conflicted with the district's authority under section 44929.21, subdivision (b) to decide not to reelect a probationary teacher without affording the teacher such due process protections. (*Round Valley*, *supra*, 13 Cal.4th at pp. 283-285.) We explained that this conclusion was consistent with *San Mateo*'s "observ[ation] that the intent of the Government Code is to *preclude* contractual agreements that would alter the meaning of other statutory provisions. As District observes, if we were to validate the requirements of [the collective bargaining] agreement with Association, we would severely undermine section 44929.21(b). Indeed, under *San Mateo*, *supra*, enforcement of [the collective bargaining provision] would result in replacing or setting aside a nonnegotiable and mandatory provision of the Education Code, a result . . . Government Code section 3540 et seq. sought to avoid." (*Round Valley,* at p. 286, italics in original.) We held that "[w]hen the Legislature vests exclusive discretion in a body to determine the scope of procedural protections to specific employees, the subject matter may not be the subject of either mandatory or permissive collective bargaining" and, on that basis, vacated the arbitration award because it sought to enforce an unlawful collective bargaining provision. (*Id.* at p. 287; see also *Sunnyvale Unified School Dist. v. Jacobs* (2009) 171 Cal.App.4th 168 [where probationary teacher claims nonreelection was motivated by retaliation for participation in union activities, the

7

only remedy is filing an unfair labor practice charge with PERB, not arbitration pursuant to collective bargaining agreement].)

Although *Round Valley* involved vacatur of an award arising from an already completed arbitration, the principles expounded in *Round Valley* and *San Mateo* have been applied in two Court of Appeal cases to deny a petition to compel arbitration. In *United Steelworkers of America v. Board of Education* (1984) 162 Cal.App.3d 823, the court upheld the denial of a petition to compel arbitration of a disputed collective bargaining provision concerning the Fontana Unified School District's termination of a bus driver who was a permanent classified employee. The court determined that such arbitration would directly conflict with section 45113, which at the time stated that " '[a]ny employee designated as a permanent employee shall be subject to disciplinary action only for cause as prescribed by rule or regulation of the governing board, but the governing board's determination of the sufficiency of the cause for disciplinary action shall be conclusive.' " (*United Steelworkers*, at p. 832, italics omitted.) Noting that our decision in *San Mateo* had specifically cited section 45113 as an example of an Education Code statute mandating "certain, procedures, protections and entitlements" that cannot be altered by a collective bargaining agreement (*United Steelworkers*, at p. 832, citing *San Mateo*, *supra*, 33 Cal.3d at p. 866, italics omitted), the court concluded that "under the *San Mateo* rationale, the governing board's determination as to sufficiency of cause to terminate is conclusive and cannot be usurped by an agreement with the Union to subsequently submit grievances to binding arbitration" (*United Steelworkers*, at p. 833).

In *Fontana Teachers Assn. v. Fontana Unified School Dist.* (1988) 201 Cal.App.3d 1517, 1521-1526 (*Fontana*), the court undertook a statutory analysis similar to our own in *Round Valley* to conclude that collective bargaining provisions for non-reelection of a probationary teacher were preempted by the Education Code and thus not subject to arbitration. In *Round Valley*, we specifically endorsed the result in *Fontana*, though not all of its reasoning. (*Round Valley*, *supra*, 13 Cal.4th at p. 283 [approving

8

*Fontana*'s refusal to compel arbitration in light of Government Code section 3543.2, subdivision (a)'s "general intent to exclude the procedures governing the reelection of probationary teachers as a proper subject of collective bargaining"].)

The conclusion that courts should refuse to compel arbitration of collective bargaining provisions in conflict with the Education Code is consistent with the statutory scheme governing arbitration under the EERA. Government Code section 3548.5 provides: "A public school employer and an exclusive representative who enter into a written agreement covering matters within the scope of representation may include in the agreement procedures for final and binding arbitration of such disputes as may arise involving the interpretation, application, or violation of the agreement." The statute makes clear that authorization to arbitrate is predicated on the existence of a collective bargaining agreement "covering matters within the scope of representation." Under Government Code section 3543.2, subdivision (a), the "scope of representation" is defined broadly to include wages, hours, benefits, leave, transfer and reassignment policies, safety conditions, class size, and procedures for evaluation, discipline, layoff, and grievance, among other topics. But, as we held in *San Mateo*, the scope of representation does not include matters that would annul, set aside, or replace portions of the Education Code. (*San Mateo*, *supra*, 33 Cal.3d at pp. 863-866.) Therefore, Government Code section 3548.5, read in conjunction with Government Code section 3540's non-supersession clause, means that the EERA does not authorize arbitration of collective bargaining provisions that directly conflict with the Education Code.

**B.**

Our conclusion is not at odds with the California Arbitration Act. (Code Civ. Proc., § 1280 et seq.) The act states that a trial court faced with a petition to compel arbitration "shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner; or

9

[¶] (b) Grounds exist for the revocation of the agreement." (*Id.*, § 1281.2.) The act further provides that "[i]f the court determines that a written agreement to arbitrate a controversy exists, an order to arbitrate such controversy may not be refused on the ground that the petitioner's contentions lack substantive merit." (*Ibid.*)

It is well established that a court will not grant a petition to compel arbitration filed pursuant to Code of Civil Procedure section 1281.2 if the subject matter to be arbitrated is not within the scope of the arbitration agreement. (See *Service Employees Internat. Union v. City of Los Angeles* (1994) 24 Cal.App.4th 136, 143-144.) Generally, a court will look to the arbitration agreement itself to determine its scope. But, as explained above, the scope of arbitration between a school district and a union representing school employees is further limited as a matter of law by the EERA's non-supersession clause. Thus, Code of Civil Procedure section 1281.2's general mandate that a court shall compel arbitration where a valid arbitration agreement exists is qualified by the EERA's placement of certain subjects governed by the Education Code beyond the scope of an arbitration agreement between a school district and an employee union.

The EERA's qualification of Code of Civil Procedure section 1281.2 illuminates why *California Correctional Peace Officers*, *supra*, 142 Cal.App.4th 198, on which the Court of Appeal relied, does not aid UTLA. In that case, the union represented rank-and-file state correctional officers as well as their supervisors. Although the two groups engaged in separate negotiations, the union alleged that a longtime practice, arguably ratified by the collective bargaining agreement, allowed supervisors to sit in on rank-and-file negotiations as observers, and vice versa. (*Id.* at pp. 202-203.) Shortly before the commencement of the litigation, the Department of Personnel Administration (Department) announced it was discontinuing the practice of allowing observers because rank-and-file observers had been disruptive in previous bargaining sessions with supervisors. (*Id.* at p. 202.)

10

The union filed a grievance and eventually a petition to compel arbitration, claiming that the collective bargaining agreement supported the continuation of the practice. The Department opposed the petition based on Government Code section 3529, subdivision (c), which states: "Excluded employees [i.e., supervisors] shall not participate in meet and confer sessions on behalf of nonexcluded employees [i.e., rank-and-file]. Nonexcluded employees shall not participate in meet and confer sessions on behalf of supervisory employees." "This statute, the Department argued, prohibits supervisory employees from observing bargaining sessions of rank-and-file employees, superseding any inconsistent language in the [memorandum of understanding] or the ground rules. From this premise, the Department argued that the petition to compel arbitration should be denied because courts have exclusive power to interpret and apply state statutes." (*California Correctional Peace Officers*, *supra*, 142 Cal.App.4th at p. 204.)

The court rejected the Department's argument based largely on its reading of Code of Civil Procedure section 1281.2. The court stated that "[s]ection 1281.2 expressly forbids the court from reaching the merits of the parties' dispute" and that " '[i]f the court determines that a written agreement to arbitrate a controversy exists, an order to arbitrate such controversy may not be refused on the ground that the petitioner's contentions lack substantive merit.' " (*California Correctional Peace Officers*, *supra*, 142 Cal.App.4th at p. 205.) While correct that a court generally may not examine the merits of the underlying dispute in deciding a petition to compel arbitration, *California Correctional Peace Officers* is distinguishable on two grounds that limit the applicability of that general rule.

First, because *California Correctional Peace Officers* did not address a petition to compel arbitration in the context of the EERA, it had no occasion to consider the EERA's limitations on the scope of collective bargaining. Instead, the case was decided under the Ralph C. Dills Act (Dills Act), which governs collective bargaining with state

11

government employees.  (Gov. Code, § 3512 et seq.)  Second, even if the Dills Act were construed to mean that a collective bargaining provision in direct conflict with that act is inarbitrable, no such conflict was present in *California Correctional Peace Officers*. Government Code section 3529's prohibition against supervisory employees participating "in meet and confer sessions *on behalf of*" rank and file employees does not appear to categorically preclude supervisors from acting as observers in such meet and confer sessions.  Whether an observer could properly be characterized as participating "on behalf of" rank-and-file employees is not clear from the statute and would likely depend on the facts of a particular case.  It was thus reasonable for the court to invoke the principle that " ' " '[d]oubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration.' " ' " (*California Correctional Peace Officers*, *supra*, 142 Cal.App.4th at p. 205.)  By contrast, in *United Steelworkers of America v. Board of Education*, *supra*, 162 Cal.App.3d 823, and *Fontana*, *supra*, 201 Cal.App.3d 1517, there was no doubt that the collective bargaining provisions at issue conflicted with mandatory directives of the Education Code and could not be enforced pursuant to collective bargaining arbitration.

## C.

The principle that collective bargaining provisions in conflict with the Education Code may not be enforced through arbitration is also consistent with precedents of our court and the United States Supreme Court.  The case law generally favors arbitration, but within limits.  In *Posner v. Grunwald-Marx, Inc.* (1961) 56 Cal.2d 169 (*Posner*), a union sought to compel the employer to arbitrate questions of eligibility for vacation and holiday pay pursuant to a collective bargaining agreement.  The trial court denied the petition, concluding that " '[t]he wording of the collective bargaining agreement is without ambiguity as to vacation pay and holiday pay' " and clearly favored the employer.  (*Id.* at p. 174.)  In so holding, the trial court applied "the so-called 'Cutler-Hammer' doctrine, which is that:  'While the contract provides for arbitration of disputes

12

as to the "meaning, performance, non-performance or application" of its provisions, the mere assertion by a party of a meaning of a provision which is clearly contrary to the plain meaning of the words cannot make an arbitrable issue. . . . If the meaning of the provision of the contract sought to be arbitrated is beyond dispute, there cannot be anything to arbitrate and the contract cannot be said to provide for arbitration.' (*International Assn. of Machinists v. Cutler-Hammer, Inc.* [(1947)] 271 App.Div. 917 [67 N.Y.S.2d 317, 318], affd. 297 N.Y. 519 [74 N.E.2d 464].)" (*Ibid.*)

In *Posner*, we rejected the *Cutler-Hammer* doctrine and reversed the denial of the petition to compel arbitration. We followed the rule formulated by the United States Supreme Court in the context of federal labor law, articulated the previous year in the "*Steelworkers Trilogy*" cases. (See *Steelworkers v. American Mfg. Co.* (1960) 363 U.S. 564; *Steelworkers v. Warrior & Gulf Co.* (1960) 363 U.S. 574; *Steelworkers v. Enterprise Corp.* (1960) 363 U.S. 593.) "This rule is to the effect that, where the collective bargaining agreement provides for arbitration of all disputes pertaining to the meaning, interpretation and application of the collective bargaining agreement and its provisions, any dispute as to the meaning, interpretation and application of any specific matter covered by the collective bargaining agreement is a matter for arbitration. Doubts as to whether the arbitration clause applies are to be resolved in favor of coverage. The parties have contracted for an arbitrator's decision and not for that of the courts. The high court declared that 'The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.' (*United Steelworkers v. American Mfg. Co.*, *supra*, 363 U.S. 564, 567-568.)" (*Posner*, *supra*, 56 Cal.2d at p. 175.)

13

At the same time, however, one of the *Steelworkers Trilogy* cases that *Posner* relied on, *Steelworkers v. Warrior & Gulf Co.*, *supra*, 363 U.S. at pages 584-585 (*Warrior & Gulf Co.*), recognized that a matter expressly excluded from the collective bargaining agreement cannot be arbitrated. In that case, the union filed a grievance claiming that the employer had violated the collective bargaining agreement by laying off some employees and contracting with other companies for work previously done by those employees. The district court dismissed the union's suit to compel arbitration, and the Court of Appeal upheld the dismissal, concluding that "the collective agreement had withdrawn from the grievance procedure 'matters which are strictly a function of management' and that contracting out fell in that exception." (*Id.* at p. 577.)

The United States Supreme Court reversed on the ground that it is generally for the arbitrator and not the court to determine whether contracting out is strictly a management function or is subject to limitation by the collective bargaining agreement. (*Warrior & Gulf Co.*, *supra*, 363 U.S. at p. 584.) The court explained that the labor arbitrator is " 'part of a system of self-government,' " who uses "his knowledge of the common law of the shop" and of the industry to fill in the gaps in the collective bargaining agreement. (*Id.* at pp. 581-582.) Nevertheless, the high court said, "[*a*] *specific collective bargaining agreement may exclude contracting out from the grievance procedure. Or a written collateral agreement may make clear that contracting out was not a matter for arbitration. In such a case a grievance based solely on contracting out would not be arbitrable.*" (*Id.* at p. 584, italics added.) Because there was no "express provision excluding [the contracting out] grievance from arbitration" in *Warrior & Gulf Co.*, the high court held that the union's grievance was arbitrable. (*Id.* at p. 585.)

In the EERA, as in federal labor law, collective bargaining arbitration is part of a system of workplace self-government that allows employees to join organizations that represent them "in their professional and employment relationships with public school employers" and afford them "a voice in the formulation of educational policy." (Gov.

14

Code, § 3540.)  However, because labor relations in this area significantly intersect with educational goals affecting society as a whole, the Legislature has limited the scope of such self-governance by withdrawing from collective bargaining certain matters in the Education Code.  The Legislature has decided that those matters should be exclusively management prerogatives, subject only to the constraints of statute.  Just as *Warrior & Gulf Co.* recognized that a grievance is inarbitrable when it arises from a matter expressly excluded by the parties from the collective bargaining agreement, the EERA makes clear that a grievance is inarbitrable when it arises from a matter, such as the reelection of probationary teachers (see *Fontana*, *supra*, 201 Cal.App.3d 1517), on which collective bargaining is statutorily preempted.

### D.

In sum, we reaffirm the principle set forth in *San Mateo* and its progeny that collective bargaining provisions pursuant to the EERA that annul, set aside, or replace provisions of the Education Code cannot be enforced.  That nonenforcement will take various forms, depending on the point at which the attempt to enforce the unlawful provision occurs.  A court will refuse to compel a school district to negotiate about a subject that the Education Code places off-limits to collective bargaining.  (*San Mateo*, *supra*, 33 Cal.3d at pp. 864-866.)  If a court is asked to compel arbitration of a collective bargaining provision that directly conflicts with the Education Code — in other words, when the Education Code makes clear that the arbitrator would be unable to lawfully grant the aggrieved party any form of relief — it should deny the petition to compel arbitration.  (*United Steelworkers of America v. Board of Education*, *supra*, 162 Cal.App.3d 823; *Fontana*, *supra*, 201 Cal.App.3d 1517.)  When there are doubts about the arbitrability of a grievance, however, those doubts should be resolved in favor of arbitration.  (*California Correctional Peace Officers*, *supra*, 142 Cal.App.4th at p. 205.)  Once a grievance crosses the threshold of arbitrability because the matter in dispute is not excluded from collective bargaining by the Education Code or by the parties themselves,

15

a court may not deny a petition to compel arbitration on the ground that the grievance lacks merit. (*Posner*, *supra*, 56 Cal.2d at pp. 175-176.) If the matter proceeds to arbitration and results in an award that conflicts with the Education Code, the award must be vacated. (*Round Valley*, *supra*, 13 Cal.4th at pp. 287-288.)

### III.

In light of the discussion above, the question of whether the Education Code precludes the collective bargaining provisions that UTLA seeks to enforce is not, as the Court of Appeal held, irrelevant to the issue of arbitrability. Rather, it goes to the heart of the issue. We now turn to that question.

### A.

We begin with an examination of the pertinent statutes. By enacting the Charter Schools Act of 1992, the Legislature authorized the creation of charter schools in order to "provide opportunities for teachers, parents, pupils, and community members to establish and maintain schools that operate independently from the existing school district structure, as a method to accomplish all of the following: (a) Improve pupil learning. (b) Increase learning opportunities for all pupils, with special emphasis on expanded learning experiences for pupils who are identified as academically low achieving. (c) Encourage the use of different and innovative teaching methods. (d) Create new professional opportunities for teachers, including the opportunity to be responsible for the learning program at the schoolsite. (e) Provide parents and pupils with expanded choices in the types of educational opportunities that are available within the public school system. (f) Hold the schools established under this part accountable for meeting measurable pupil outcomes, and provide the schools with a method to change from rule-based to performance-based accountability systems. (g) Provide vigorous competition within the public school system to stimulate continual improvements in all public schools." (§ 47601, paragraphing omitted.)

16

The charter school legislation sought to encourage educational innovation by creating schools that would be "free from most state laws pertaining uniquely to school districts." (*Wilson v. State Bd. of Education* (1999) 75 Cal.App.4th 1125, 1130.) At the same time, "charter schools are *strictly* creatures of statute. From how charter schools come into being, to who attends and who can teach, to how they are governed and structured, to funding, accountability and evaluation — the Legislature has plotted all aspects of their existence." (*Id.* at p. 1135.)

Section 47605 details the means by which a charter school may be established. The first step, set forth in subdivision (a), is submission to the governing board of a school district a petition signed either by "a number of parents or legal guardians of pupils that is equivalent to at least one-half of the number of pupils that the charter school estimates will enroll in the school for its first year of operation" or by "a number of teachers that is equivalent to at least one-half of the number of teachers that the charter school estimates will be employed at the school during its first year of operation." (§ 47605, subd. (a)(1)(A) & (B).) When the petition "proposes to convert an existing public school to a charter school," as in the present case, "[t]he petition may be submitted to the governing board of the school district for review after the petition has been signed by not less than 50 percent of the permanent status teachers currently employed at the public school to be converted." (*Id.*, subd. (a)(2).) The petition "shall include a prominent statement that a signature on the petition means that the parent or legal guardian is meaningfully interested in having his or her child or ward attend the charter school, or in the case of a teacher's signature, means that the teacher is meaningfully interested in teaching at the charter school. The proposed charter shall be attached to the petition." (*Id.*, subd. (a)(3).)

Subdivision (b) of section 47605 (hereafter section 47605(b)) prescribes the manner by which a school district governing board is to approve or deny a charter petition: "No later than 30 days after receiving a petition, in accordance with subdivision

17

(a), the governing board of the school district shall hold a public hearing on the provisions of the charter, at which time the governing board of the school district shall consider the level of support for the petition by teachers employed by the district, other employees of the district, and parents. Following review of the petition and the public hearing, the governing board of the school district shall either grant or deny the charter within 60 days of receipt of the petition, provided, however, that the date may be extended by an additional 30 days if both parties agree to the extension. In reviewing petitions for the establishment of charter schools pursuant to this section, the chartering authority shall be guided by the intent of the Legislature that charter schools are and should become an integral part of the California educational system and that establishment of charter schools should be encouraged. The governing board of the school district shall grant a charter for the operation of a school under this part if it is satisfied that granting the charter is consistent with sound educational practice."

Section 47605(b) also sets forth the grounds on which a governing board can deny a petition: "The governing board of the school district shall not deny a petition for the establishment of a charter school unless it makes written factual findings, specific to the particular petition, setting forth specific facts to support one or more of the following findings: (1) The charter school presents an unsound educational program for the pupils to be enrolled in the charter school. (2) The petitioners are demonstrably unlikely to successfully implement the program set forth in the petition. (3) The petition does not contain the number of signatures required by subdivision (a). (4) The petition does not contain an affirmation of each of the conditions described in subdivision (d) [requiring a charter school to be nonsectarian and not to engage in certain types of discrimination]." (Paragraphing omitted.)

A petition can also be denied under section 47605(b) if it does not "contain reasonably comprehensive descriptions" of an extensive list of items, including "the educational program of the school," "measurable pupil outcomes," "[t]he method by

18

which pupil progress in meeting those pupil outcomes is to be measured," "[t]he governance structure of the school," "the qualifications to be met by individuals to be employed by the school," "[a]dmission requirements, if applicable," "[t]he manner by which staff members of the charter schools will be covered by the State Teachers' Retirement System, the Public Employees' Retirement System, or federal social security," "[a] description of the rights of any employee of the school district upon leaving the employment of the school district to work in a charter school, and of any rights of return to the school district after employment at a charter school," and "[a] declaration whether or not the charter school shall be deemed the exclusive public school employer of the employees of the charter school" for purposes of the EERA. (§ 47605(b)(5).)

After a charter is granted, the granting authority can revoke the charter "if the authority finds, through a showing of substantial evidence, that the charter school did any of the following: (1) Committed a material violation of any of the conditions, standards, or procedures set forth in the charter. (2) Failed to meet or pursue any of the pupil outcomes identified in the charter. (3) Failed to meet generally accepted accounting principles, or engaged in fiscal mismanagement. (4) Violated any provision of law." (§ 47607, subd. (c) (hereafter section 47607(c), paragraphing omitted).) "Prior to revocation, the authority that granted the charter shall notify the charter public school of any violation of this section and give the school a reasonable opportunity to remedy the violation, unless the authority determines, in writing, that the violation constitutes a severe and imminent threat to the health or safety of the pupils." (§ 47607, subd. (d) (hereafter section 47607(d)).)

The role of collective bargaining in charter schools has evolved since the original passage of the Charter Schools Act of 1992. The legislative history shows that there were two versions of the statute that the Legislature enacted in 1992. One of them, Assembly Bill No. 2585 (1991-1992 Reg. Sess.), would have required teachers' union consent for

conversion of an existing school to a charter school. The other, Senate Bill No. 1448 (1991-1992 Reg. Sess.), did not authorize union approval of charter schools or require collective bargaining. Governor Wilson vetoed the former bill and signed the latter. In his veto message for Assembly Bill No. 2585, he identified that bill's provisions requiring "teacher union approval of all charter schools" and "elaborate collective-bargaining processes" as reasons for his veto. (Governor's Veto Message to Assem. on Assem. Bill No. 2585, Sept. 20, 1992, 6 Assem.J. (1991-1992 Reg.Sess.) pp. 10208-10209.)

The role of employee unions and collective bargaining in charter schools changed with the passage of section 47611.5 in 1999. (Stats 1999, ch. 828, § 2, p. 6014.) Subdivision (a) of section 47611.5 provides that the EERA "shall apply to charter schools," thereby authorizing union representation of charter school employees. Subdivision (e) of section 47611.5 (hereafter section 47611.5(e)), however, establishes an important limit to that representation: "The approval or a denial of a charter petition by a granting agency pursuant to subdivision (b) of Section 47605 shall not be controlled by collective bargaining agreements nor subject to review or regulation by the Public Employment Relations Board."

From the above statutes, three conclusions important to the resolution of this case emerge. First, by stating that "[t]he governing board of the school district shall not deny a petition for the establishment of a charter school unless it makes written factual findings" that the charter does not meet one or more of the statutorily specified requirements, section 47605(b) makes clear that the grounds for denying a charter school petition enumerated in that subdivision are exclusive. Second, because section 47607(d) provides that "[p]rior to revocation, the authority that granted the charter shall notify the charter public school of any violation *of this section*" (italics added), it is clear that section 47607(c) sets forth the exclusive grounds for revocation of an existing charter. Third, section 47611.5(e), read in conjunction with the non-supersession clause of

20

Government Code section 3540, makes clear that while union representation and collective bargaining do have a place in charter schools, the approval or denial of a charter petition may not be controlled by a collective bargaining agreement.

**B.**

We now examine whether the collective bargaining provisions at issue in this case conflict with the statutes above. UTLA's grievance contends that the District, in the course of reviewing and approving the Locke High School charter conversion, violated sections 2.0 and 3.0 of Article XII-B of the 2006-2009 collective bargaining agreement between the District and UTLA (hereafter sections 2.0 and 3.0). The District argues that sections 2.0 and 3.0 in their entirety are preempted by the Education Code. By contrast, UTLA argues that the collective bargaining provisions do not conflict with section 47605 or other charter school statutes but rather advance their efficacy by facilitating greater communication between the District, UTLA, and represented employees.

As an initial matter, we note that "[a]n agreement may authorize an arbitrator, rather than a court, to determine whether a given controversy is subject to arbitration, but if it does not, then the court must make this determination. [Citation.]" (*Fontana*, *supra*, 201 Cal.App.3d at p. 1521.) In the present case, the agreement does not authorize the arbitrator to determine arbitrability. Accordingly, we need not decide whether a collective bargaining agreement under the EERA that delegates that determination to an arbitrator means that the arbitrator would decide in the first instance whether a collective bargaining provision conflicts with the Education Code. The arbitrability issue in this case is for the court.

Section 2.0 of the collective bargaining agreement addresses the District's obligations to the union and its employees during the charter application process. It provides: "Charter Application Procedures: In addition to whatever procedures the Board of Education may establish in its discretion, the District shall adhere to the following procedures in processing or considering approval of any proposal to convert an

21

existing District school to Charter School status." Section 2.0 then provides that the District's "procedures and instructions" should "urge" or "encourage" the charter school petitioner to present the complete charter to employees before soliciting signatures, to discuss alternatives to charter conversion with the District and UTLA, and to fully disclose the terms and conditions of employment as specified in section 3.0. In addition, section 2.0 (c) provides: "Within five days of receipt of a Charter School proposal from a formative Conversion Charter School, the District Charter Schools office shall forward a copy to UTLA. UTLA shall then be granted not less than 30 days in which to submit comments and/or recommendations to the Board of Education concerning the charter application."

Section 3.0 provides: "Full Disclosure by Charter Schools: Conversion Charter Schools operate independently of the District, and may or may not choose to adopt pay, benefits and other employment practices comparable to those of the District. Conversion Charter Schools (including proposed Charter Schools) therefore will be expected, in fairness to affected employees and all other concerned persons, to disclose clearly and fully the basic terms and conditions of employment to be provided by the Charter School — and do so prior to asking the employees for any formal commitments of support and/or employment, and also to do so when the Charter School's employees annually decide whether to renew their District leaves of absence (see below) in order to remain employed by the Charter School." It then enumerates various disclosures that charter school petitioners "should" make, including "a. Whether the Charter School intends to request that the District grant leaves of absence to the charter school's employees to facilitate their charter school service and protect their rights of return, as discussed in Sections 5.0 and 6.0 below; b. Whether the Charter School intends to request that the District provide, at charter school expense, continued coverage under the District health benefits programs, as described in Section 7.0 below; c. The salaries to be paid to the

22

Charter School's employees, and the salary progression system to be observed, if any; also, the pay rates, if any, to be offered for identified extra duty assignments."

The District takes the position that sections 2.0 and 3.0 in their entirety conflict with the Education Code in part because one of the remedies UTLA requested on its grievance form for the alleged violations of sections 2.0 and 3.0 is to "rescind Charter approval and all references thereafter." The District contends that any such rescission would necessarily run afoul of key charter school statutes. We agree that rescission is not a permissible remedy here. As discussed above, section 47605(b) provides the exclusive grounds for denying a charter petition, and section 47607(c) sets forth the exclusive grounds for revoking a charter. Section 47611.5(e) prohibits a collective bargaining agreement from controlling the approval or a denial of a charter petition, and Government Code section 3540's non-supercession clause forbids collective bargaining provisions that conflict with the Education Code. These statutes taken together squarely prohibit rescission of a charter approval because of noncompliance with requirements imposed by a collective bargaining agreement. Thus, rescission of the Locke High School charter pursuant to UTLA's grievance would clearly annul or set aside provisions of the Education Code and may not be granted.

Moreover, we agree with the District that section 47605 establishes a comprehensive process for approval of charter petitions, spelling out precisely what is expected of a charter applicant. Any collective bargaining provision that delays the timelines set forth in section 47605 or adds to an applicant's statutory obligations for securing approval of a charter conflicts with section 47605 and may not be enforced.

These conclusions, however, do not necessarily render all of UTLA's grievances inarbitrable. UTLA's grievance form also requests as a remedy "full and complete compliance with the Collective Bargaining Agreement," "express acknowledgement of UTLA rights," and "such further relief as may be granted under the Collective Bargaining Agreement." These remedies arguably may take the form of prospective relief against

23

the District that neither controls the approval or denial of a charter petition nor delays or obstructs the charter petition approval process.

Moreover, some parts of sections 2.0 and 3.0 require the District to take certain steps that will lead to the provision of information about the charter petition to affected employees and to UTLA. It is not clear whether the charter school statutes preclude a school district from voluntarily consenting in a collective bargaining agreement to take such steps. It is also unclear whether enforcement of such an agreement will invariably delay or obstruct the charter petition process. For example, to what extent, if any, would the charter petition process be unlawfully delayed or obstructed by section 2.0(c)'s requirement that the District must make a charter proposal available to UTLA within five days of receipt?

As this case stands before us, we decline to decide which parts of sections 2.0 and 3.0, if any, conflict with the Education Code because it is unclear which parts of sections 2.0 and 3.0 UTLA seeks to enforce in its grievance. This lack of clarity is due to the fact that most of UTLA's grievances do not precisely correspond to any provision in section 2.0 or section 3.0. For example, whereas UTLA's first grievance states that the District did "not present[] the complete Charter to employees," the collective bargaining provision that appears to be most closely related, section 2.0(a), requires the District to adopt "procedures and instructions" that "urge" charter applicants to present a complete charter to employees before soliciting signatures on a charter petition. Similarly, whereas UTLA's fourth grievance states that the District failed to "disclos[e] clearly and fully the basic terms and conditions of employment to be provided by Charter School," the collective bargaining provision that appears to be most closely related, section 2.0(d), requires the District to adopt "procedures and instructions" that "encourage" charter applicants to disclose terms and conditions of employment. Further, whereas UTLA's grievance form lists section 3.0 as one of the collective bargaining provisions "allegedly violated" by the District, section 3.0 by its terms imposes no obligations on the District;

24

instead, it lists various disclosures that charter schools or charter applicants are "expected" to make.

Rather than guess which collective bargaining provisions UTLA is actually invoking, we remand the case to the trial court with instructions to direct UTLA to identify such provisions in an amended petition to compel arbitration and to explain why those provisions do not set aside, annul, or replace provisions of the Education Code. UTLA should identify *with specificity* such collective bargaining provisions. For reasons of judicial economy and judicial restraint, and to minimize incentives toward overbroad and poorly drafted grievances, courts should apply Education Code preemption analysis only to the specific collective bargaining provisions that are actually at issue in a given case. Where, as here, it is unclear which collective bargaining provisions are at issue, the court should request clarification. Moreover, a party may not claim that a nonpreempted provision is at issue in order to compel arbitration, but then attempt to arbitrate a preempted provision. Such a bait-and-switch tactic would lead to vacatur of the arbitration award.

We emphasize that we express no view on the enforceability of the collective bargaining provisions or the merits of UTLA's grievances. Nor do we suggest what remedy, if any, would be available in the event that some of UTLA's grievances prove meritorious. We hold only that a collective bargaining provision does not conflict with the Education Code if its enforcement would neither control the approval or denial of a charter petition nor delay or obstruct the charter petition approval process. Because it is unclear which collective bargaining provisions are at issue in this case, we remand to the trial court to identify those provisions and to determine whether their enforcement would set aside, annul, or replace provisions of the Education Code. We also make clear that if the arbitration process, in applying the collective bargaining agreement to the particulars of this dispute, ends up imposing obligations on the District that run counter to the statute or otherwise violate public policy, the arbitration award must be vacated.

25

## IV.

The District filed a motion shortly before oral argument requesting we take judicial notice of legislative history materials pertaining to section 47611.5 and of certain collective bargaining provisions not included in the appellate record. The District explained that this motion was originally filed in the Court of Appeal and was denied evidently because of the Court of Appeal's view that anything going to the issue of whether a collective bargaining provision violated the Education Code was not relevant. In this court, the District filed a motion requesting judicial notice of other material, but it did not file a motion separately requesting that we judicially notice the material rejected by the Court of Appeal. The District apparently believed that we would consider the rejected motion for judicial notice as a matter of course. Our order shortly before oral argument granting and denying various judicial notice requests did not include the judicial notice motion rejected by the Court of Appeal. The District then filed the present motion in this court.

The District's motion prompts us to make clear that we will not consider a judicial notice motion filed in and rejected by the Court of Appeal unless a party files a separate motion in this court seeking judicial notice. This requirement follows from the California Rules of Court, rule 8.252(a) that "[t]o obtain judicial notice by a reviewing court under Evidence Code section 459, a party must serve and file a separate motion with a proposed order." (See Cal. Rules of Court, rule 8.520(g) ["[t]o obtain judicial notice by the Supreme Court . . . a party must comply with rule 8.252(a)]."") Also, once this court grants review, not all matters and motions that were before the Court of Appeal continue to be relevant to the case, and it is up to the party seeking judicial notice to renew the motion in this court.

As for the merits, we grant the District's motion to notice relevant legislative history and a relevant collective bargaining provision of undisputed authenticity. (See Evid. Code, § 452, subds. (c), (h).)

26

## CONCLUSION

The judgment of the Court of Appeal is reversed and the cause is remanded for proceedings consistent with this opinion.


LIU, J.


WE CONCUR:  CANTIL-SAKAUYE, C. J.
            KENNARD, J.
            BAXTER, J.
            WERDEGAR, J.
            CHIN, J.
            CORRIGAN, J.

27

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** United Teachers Los Angeles v. Los Angeles Unified School District
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 177 Cal.App.4th 863
**Rehearing Granted**

_____

**Opinion No.** S177403
**Date Filed:** June 28, 2012
_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Mary Ann Murphy

_____

**Counsel:**

Holguin, Garfield & Martinez, Holguin, Garfield, Martinez & Quiñonez, Jesús E. Quiñonez and John J. Kim for Plaintiff and Appellant.

Altshuler Berzon, Stephen P. Berzon and Matthew J. Murray for California Teachers Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Miller Brown & Dannis, Dannis Woliver Kelley and Sue Ann Salmon Evans for Defendant and Respondent.

Lozano Smith, Martha Buell Scott and Edward Sklar for California School Boards Association's Education Legal Alliance as Amicus Curiae on behalf of Defendant and Respondent.

Law Offices of Middleton, Young & Minner, James E. Young and Chastin H. Pierman for Green Dot Public Schools as Amicus Curiae on behalf of Defendant and Respondent.

Procopio, Cory, Hargreaves & Savitch, Gregory V. Moser and Alyssa Aiko Osugi for California Charter Schools Association as Amicus Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Jesús E. Quiñonez
Holguin, Garfield & Martinez
800 W. Sixth Street. Suite 950
Los Angeles, CA  90017
(213) 623-0170

Stephen P. Berzon
Altshuler Berzon
177 Post Street, Suite 300
Sam Francisco, CA  94108
(415) 421-7151

Sue Ann Salmon Evans
Dannis Woliver Kelley
301 E. Ocean Blvd., Suite 1750
Long Beach, CA  90802
(562) 366-8500

James E. Young
Law Offices of Middleton, Young & Minner
701 University Avenue, Suite 150
Sacramento, CA  95825
(916) 646-1400