Filed 4/10/25; Certified for Publication 5/2/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LOS ANGELES COLLEGE FACULTY GUILD, AFT LOCAL 1521,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>LOS ANGELES COMMUNITY COLLEGE DISTRICT,<br><br>Defendant and Respondent. | B339084<br><br>Los Angeles County<br>Super. Ct. No. 23STCP03952 |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed.

Bush Gottlieb and Jason Wojciechowski for Plaintiff and Appellant.

Lozano Smith, Mark W. Waterman and Aislinn K. Roberts for Defendant and Respondent.

_____

The Los Angeles College Faculty Guild, AFT Local 1521 asks us to reverse the trial court's denial of its motion to compel arbitration of three grievances against the Los Angeles Community College District. This request conflicts with our decision in *Los Angeles College Faculty Guild 1521 v. Los Angeles Community College District* (2022) 83 Cal.App.5th 660 (*Faculty Guild*), where we considered a similar dispute between the same parties and the same collective bargaining agreement. In *Faculty Guild*, we held that the dispute between the Guild and the District was outside the scope of the arbitration provision in their collective bargaining agreement. (*Faculty Guild*, 83 Cal.App.4th at p. 669.) Today the Guild's grievances again are beyond the scope of the parties' arbitration agreement. We affirm the trial court.

References to "the Agreement" mean the collective bargaining agreement between the parties, and citations to any Article refer to articles in the Agreement.

I

We explain the statutory framework and the underlying Agreement.

A

The key statute is the Educational Employment Relations Act, codified at Government Code sections 3540-3549.3. Government Code section 3540 sets forth the Act's purpose: "to promote the improvement of personnel management and employer-employee relations within the public school systems in the State of California." It accomplishes this goal by establishing a collective bargaining system for public school employees and their employers. (See *San Mateo City School Dist. v. Public Employment Relations Bd.* (1983) 33 Cal.3d 850, 855–856 (*San*

2

*Mateo*).)  Like federal labor law, the Act permits a school district and the union representing its employees to enter into a collective bargaining agreement, and to resolve their disputes involving interpretation, application, or violation of their collective bargaining agreement through arbitration.  (See *ibid.*; Gov. Code § 3548.5.)

Unlike as in federal labor law practice, however, our Legislature expressly limited the scope of public school employee representation.  Under the Act, collective bargaining is limited to "matters relating to wages, hours of employment, and other terms and conditions of employment."  (Gov. Code § 3543.2(a)(1).)  "Terms and conditions of employment" mean health and welfare benefits, leave, transfer and reassignment policies, safety conditions, class size, and procedures for evaluation, discipline, layoff, and grievance.  (*Ibid.*)  This limitation reflects the Legislature's decision that certain matters in the Education Code "should be exclusively management prerogatives, subject only to the constraints of statute."  (*United Teachers of Los Angeles v. Los Angeles Unified School Dist.* (2012) 54 Cal.4th 504, 520 (*United Teachers*).)

Moreover, the Legislature also clarified that the Act "shall not supersede other provisions of the Education Code."  (Gov. Code § 3540.)  Our Supreme Court has described this important sentence as the "non-supersession clause."   (See *United Teachers*, *supra*, 54 Cal.4th at p. 513.)

The Act is the foundation for the Agreement.  In Article 2, the District recognizes the Guild as the exclusive representative for its faculty employees pursuant to the Act.  Article 7 grants to the District "all the customary and usual rights, powers, functions, and authority established in [the Act]."

3

Most relevant is Article 28, entitled "Grievance Procedure." Article 28 defines grievance as "the procedure to remedy a misinterpretation, misapplication, or violation of a specific item of this Agreement or of a written rule or regulation of the [District]."

Resolving a grievance under Article 28 involves up to three steps, the last of which is arbitration before an agreed-upon arbitrator.

Paragraph 4 of Article 28 describes the arbitration process. It specifies that the "arbitrator shall have no power to add to, subtract from, disregard, alter, or modify any terms of this Agreement." Remedies the arbitrator may award are the payment of salary if grievants prove they rendered a service for which they have not been paid, or monetary awards "in accordance with the principle of arbitration" to make an injured party whole. The arbitrator's findings, conclusions, and recommendations are final and binding on both the Guild and the District.

B

The Guild sought to arbitrate three grievances against the District. We describe these three.

1

The City College/Safety Grievance is about safety-related construction projects at Los Angeles City College, which is one of the District's nine colleges.

After voters passed Measure CC in 2016 and Measure LA in 2022, the District gained funding for certain infrastructure and technology upgrades. The Construction Bonds Act, Education Code section 15264 et seq., governs the District's work on facilities projects that Measure LA funded.

4

Faculty members Julie Washenik and Christine Park initiated the grievance in November 2022, alleging that incomplete facilities projects "have unnecessarily and substantially reduced Los Angeles City College's . . . ability to mitigate safety risks and respond to emergencies," in violation of Article 9.  These incomplete projects include an emergency notification system, emergency lighting and security cameras, building and classroom locks, and fencing.  The proposed remedy was for the District to fund and coordinate completion of the named safety projects by February 2023.

The District denied violating Article 9, stating that the February 2023 deadline in the grievance was "unreasonable" in light of the fact that the projects required multiple levels of input and approval from the Division of the State Architect and licensed inspectors to comply with the Building Code and other statutory requirements.  The District also noted that each of the projects was funded and "well underway with significant progress," but did not commit to any date for completion.  Rather, the District stated "[w]here schedule improvements are possible, the project and construction management team continuously evaluate and assess[] opportunities on a case by case basis at the behest of the College to finish these projects as reasonably possible without increased liability or increased risk of fire, life, safety, structural integrity, or inaccessibility."

2

The Pierce/Williams Grievance concerns Michael Williams, a faculty member at Pierce College.

Williams began working for the District in 2007 as an Instructor Special Assignment, Specially Funded Programs position.  In March 2023, the District notified Williams that

5

funding for his position would expire in June 2023, and that it would not employ him in the 2023-24 school year.

In June 2023, Williams filed a grievance against the District, alleging violations of Articles 6E and 7, the Education Code, and the District's Human Resources Policies. Williams believed there was funding for his position based on a January 2022 memo from the chancellor, and claimed the District's dismissal of him violated his "right to continued employment" under Education Code section 87470 and Human Resource Policy R-121. In the alternative, Williams argued he was a tenured faculty member whom the District could terminate only under the grounds listed in Education Code section 87732, none of which applied to him. As a remedy, Williams sought "an immediate rescission of the termination letter with full tenure effective immediately with Mr. Williams's restored position and the restoration of benefits. Additionally, clear acknowledgement of Mr. Williams's role as the Coordinator . . . through [its] duration as per the contract."

The District denied Williams's grievance in August 2023. According to the District, Williams never had tenure-track or regular faculty status per Article 13.D.11. Funding for Williams's position ended in June 2023, the District reiterated, and the employment of people in his position was limited to the duration and funding of the assigned specially funded program.

3

The Trade-Tech/Karasik Grievance pertains to the retirement benefits of Pavel Karasik, a faculty member at Los Angeles Trade-Technical College.

In May 2023, Karasik filed a grievance against the District, alleging violations of Articles 13, 14, and 36 and Agreement

6

Appendices D and A in the District's miscalculation of his "service credit" in its reporting to the California Public Employees' Retirement System ("CalPERS"), which caused CalPERS to find him ineligible for retirement. Karasik further alleged that, after "multiple efforts to prove the District miscalculated his service credit," in April 2023, CalPERS found errors in the District's reporting and asked the District to correct these errors. Karasik sought three remedies: that the District correct all errors and "submit correct service credit" to CalPERS; backpay since 2017 for any wages the District erroneously did not pay him; and that the District allow him and the Guild to review any recalculations before submission to CalPERS.

In August 2023, the District denied Karasik's grievance. The District's written response pointed out that the Government Code governs CalPERS reporting, and that the District does not report service credit, but rather reports earnings to CalPERS, and CalPERS calculates service credits and determines eligibility of reportable compensation. According to the District, CalPERS had provided guidance on how the District should correct the reporting of Karasik's earnings, and the District's employees were working with CalPERS to resolve the problems with Karasik's records. The District advised Karasik to contact CalPERS for further assistance.

C

Following the District's denial of each grievance, the Guild's Grievance Review Committee voted to take each of the three disputes to arbitration. The District refused to arbitrate, asserting none of the disputes were arbitrable under the Agreement.

7

The Guild filed suit and moved to compel arbitration under section 1281 and 1281.2 of the Code of Civil Procedure, arguing the District had violated the Agreement by refusing to arbitrate the three grievances.

After a hearing, the trial court issued a mixed ruling. It partially granted the motion as to the Trade-Tech/Karasik Grievance, ordering the parties to arbitrate the issue of whether the District's alleged violations of the Agreement warranted an award of backpay to Karasik. And it denied the motion as to the remainder of the Trade-Tech/Karasik and entirety of the City College/Safety and Pierce/Williams Grievances, finding these grievances were beyond the Guild's scope of representation under the Agreement.

This appeal followed.

## II

There is a presumption in favor of arbitrability of disputes arising from collective bargaining agreements. (See *City of Los Angeles v. Superior Ct.* (2013) 56 Cal.4th 1086, 1096.) And in the absence of a delegation clause, as is the case here, arbitrability is for the court to decide, not the arbitrator. (*Faculty Guild*, *supra*, 83 Cal.App.5th at pp. 666–667.)

The parties' dispute about the arbitrability of the Guild's grievances hinges on dueling interpretations of the Supreme Court's holding in *United Teachers* that "collective bargaining provisions pursuant to the [Act] that annul, set aside, or replace provisions of the Education Code cannot be enforced." (*United Teachers*, *supra*, 54 Cal.4th at p. 520.) According to the Guild, this holding means that it is proper for a court to deny arbitration only if *the court* can "identify provisions of the Education Code that are clearly in conflict with the Guild's

8

asserted interpretations of the [Agreement] such that there is no possible relief an arbitrator could grant," and that the Guild's grievances here have no such conflicts. The District cites *United Teachers* to support its argument that the Guild cannot compel arbitration unless it can prove its grievances are "not excluded from collective bargaining by the Education Code" or another statute, and that all three grievances concern matters that either the Education Code or Government Code preemptively occupy.

As the party seeking arbitration, it is the Guild's burden to demonstrate arbitrability of its grievances to the court. (See *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413.) Here, that requires proving that no statutes preempt collective bargaining under the Act. (*United Teachers*, *supra*, 54 Cal.4th at p. 520.) We understand *United Teachers* to mean that a court should compel arbitration only if the party seeking it proves that enforcement of collective bargaining under the Act does not conflict with the Education Code or any other statute. That is the only reasonable way to interpret the Act's non-supersession clause. (*See* Gov. Code § 3540 [the Act "shall not supersede other provisions of the Education Code."].)

In *Faculty Guild*, we recognized that the Act circumscribes arbitrable issues because the Legislature explicitly limited a public school union's scope of representation to a set of enumerated matters: wages, hours, health and welfare benefits, leave, transfer and reassignment policies, safety conditions, class size, employee evaluation procedures, organizational security, grievance processing procedures, certain layoffs, and alternative compensation or benefits for employees adversely affected by pension limitations. (*Faculty Guild*, *supra*, 83 Cal.App.5th at pp.

9

668–669.) Unenumerated matters are generally outside the scope of representation and are not arbitrable. (*Ibid.* at p. 669.)

Thus, for the Guild to meet its burden of compelling arbitration, it must demonstrate that each of the grievances it seeks to arbitrate are within the scope of representation as the Act enumerates. Consistent with our holding in *Faculty Guild*, we agree with the District that the Guild largely failed to meet this burden. The trial court properly denied the bulk of the Guild's motion to compel and correctly found that only Karasik's backpay grievance is arbitrable under the Agreement.

A

We first examine the City College/Safety Grievance.

The Guild argues this grievance is arbitrable because the Act's scope of representation explicitly includes "safety conditions of employment," and the Guild's grievance claims the District violated Article 9, titled "Work Environment," in failing to complete the construction projects. Furthermore, the Guild argues that Education Code preemption does not necessarily apply here. It notes both the District and trial court couched their preemption arguments on the grievance being inarbitrable "*[t]o the extent* [the grievance] seeks to dictate the use of bond funds inconsistently with the requirements and procedures of the Construction Bonds Act." According to the Guild, the possibility that resolving the grievance need not conflict with the Construction Bonds Act is a sufficient basis for the court to compel arbitration.

In response, the District argues the grievance, despite the Guild labeling it as a "safety" issue, is actually about "bond-funded construction projects outside the scope of representation." According to the District, "[t]he parties did not agree to bargain

10

over the progress of these construction projects, nor did they agree to subject them to the [Agreement]'s grievance or arbitration procedures."

The District is right. This grievance, while tangentially related to "safety conditions of employment," ultimately concerns the progress of construction projects the District already agreed to undertake and is in the process of completing with funds pursuant to the Construction Bonds Act. Construction projects are beyond the Guild's scope of representation and collective bargaining. (Gov. Code § 3543.2(a)(1).) To get funding for new construction, California school districts usually seek voter approval for the issuance of general obligation bonds pursuant to the Construction Bonds Act. (See *San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1395.) Here, Measures CC and LA provided such funding to the District. The Construction Bond Act limits the District's expenditure of bond proceeds from Measures CC and LA to "construction, reconstruction, rehabilitation, or replacement of school facilities, including the furnishing and equipping of school facilities, or the acquisition or lease of real property for school facilities . . . ." (*See* Education Code § 15278(b)(1) and Cal. Const., art. XIII A § 1(b)(3).) Under the Construction Bonds Act, a citizens' oversight committee actively reviews and reports "on the proper expenditure of taxpayers' money for school construction." (Education Code § 15278(b).) There is no role for the Guild in this process.

This grievance cannot be resolved in a manner that does not "set aside, annul, or replace" the Construction Bond Act's requirements and procedures. (See *United Teachers, supra*, 54

11

Cal.4th at p. 528.)  In light of the Act's non-supersession clause, the Education Code preempts this grievance.  (*Ibid.*)

B

Next, we address the Pierce/Williams grievance.

According to the Guild, this grievance is arbitrable because the Agreement permits the Guild to grieve "a misinterpretation, misapplication, or violation of a specific item of this Agreement or of a written rule or regulation of the [District]," and Williams's grievance asserts violations of the District's Human Resources Policies, in addition to Articles 6(E) and 7 of the Agreement, and certain provisions of the Education Code.  The Guild further asserts that we either wrongly decided *Faculty Guild*, or that *Faculty Guild* does not control the resolution of the Pierce/ Williams grievance.

The District counters that the Education Code preempts arbitration of the Pierce/Williams Grievance, and the Guild cannot make the grievance arbitrable merely by citing the District's Human Resources Policy.

Again, the District is correct.  The employment or dismissal of an Instructor, Special Assignment like Williams is not one of the enumerated items in the Act subject to collective bargaining. (*See* Gov. Code § 3543.2(a)(1.)

Moreover, the essence of Williams's grievance is an alleged violation of the Education Code, not the Agreement or a District policy (the text of which the Guild never provided).  It is not possible to divorce the Guild's allegations of Education Code violations from its allegations of Agreement or District Policy violations.  We decline the Guild's invitation to overrule or depart from our holding in *Faculty Guild* rejecting the Guild's argument that Article 6(e) "is violated whenever any applicable state or

12

federal law is violated, and therefore all claims that the District violated a law are arbitrable." (See *Faculty Guild*, *supra*, 83 Cal.App.5th at p. 673.) The Guild alleged in its grievance that either Education Code section 87470 or section 87732 governed Williams's employment. Resolving Williams's grievance would require an arbitrator to interpret the Education Code, which is beyond the scope of the arbitrator's authority under the Agreement. Thus, the Education Code preempts this grievance.

C

Finally, we turn to the Trade-Tech/Karasik Grievance.

The Guild argues the trial court misconstrued this grievance as seeking a remedy from CalPERS instead of the District and erred in ordering only the backpay part of the grievance to arbitration. The Guild also urges that we interpret the Agreement to allow the arbitrator to order the injunctive relief it seeks on Karasik's behalf: that the District correct the "service credits" it reports to CalPERS, and that the District permit Karasik and the Guild to review its recalculations before reporting the recalculations to CalPERS. In support of this argument, the Guild points to *S.F. Housing Authority v. SEIU Local 790* (2010) 182 Cal.App.4th 933, 943 (*S.F. Housing*), which held that "[a]bsent an express and unambiguous limitation in the contract or the submission to arbitration, an arbitrator has the authority to find the facts, interpret the contract, and award any relief rationally related to his or her factual findings and contractual interpretation."

The District asserts the Public Employees' Retirement Law, Gov. Code section 20000 et seq., occupies the field of CalPERS benefits and preempts Karasik's grievance. It points out anyone seeking to challenge a CalPERS determination of their benefits

13

must first go through Public Employees Retirement Law administrative procedure.  (See Cal. Code Regs., tit. 2, § 555.2.)

The District is correct.  Karasik's CalPERS benefits are beyond the Guild's scope of representation and his remedy for any service credit correction lies with CalPERS, not the District.

The Guild argues the arbitrator could nonetheless order the District to comply with Karasik's request that the District allow him and the Guild to review its recalculations.  This proposal is beyond the scope of the arbitrator's powers under the Agreement.  Article 28 lists only two remedies an arbitrator can order: backpay or a monetary award of up to $2500.  There is no mention of injunctive relief.  The express language of Article 28 precludes us from interpreting it to allow the relief the Guild seeks.

## DISPOSITION

We affirm and award costs to the District.

WILEY, J.

We concur:

GRIMES, Acting P. J.

VIRAMONTES, J.

14

Filed 5/2/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LOS ANGELES COLLEGE FACULTY GUILD, AFT LOCAL 1521, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> LOS ANGELES COMMUNITY COLLEGE DISTRICT, <br><br> Defendant and Respondent. | B339084 <br><br> (Los Angeles County Super. Ct. No. 23STCP03952) <br><br> **ORDER CERTIFYING OPINION FOR PUBLICATION** <br><br> **[No change in judgment]** |

THE COURT:

The opinion in the above-entitled matter filed on April 10, 2025, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in the judgment.

_____

GRIMES, Acting P. J.        WILEY, J.        VIRAMONTES, J.