Filed 5/26/23 Today's Fresh Start v. Inglewood Unified etc. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| TODAY'S FRESH START, INC., | B314405 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCP02646) |
| v. | |
| INGLEWOOD UNIFIED SCHOOL DISTRICT et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mary H. Strobel, Judge. Affirmed.

Young, Minney & Corr, Paul C. Minney and Kevin M. Troy for Plaintiff and Appellant.

Dannis Woliver Kelley, Sue Ann Salmon Evans and Keith A. Yeomans for Defendants and Respondents Inglewood Unified School District and Erika Torres.

Vibiana M. Andrade and Patrick Saldana for Defendants and Respondents Los Angeles County Office of Education and Debra Duardo.

_____

This appeal addresses a county official's authority to deny renewal of a charter school in an insolvent public school district. Charter schools are "public schools funded with public money but run by private individuals or entities rather than traditional public school districts." (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 205 (*TFS I*).) Schools are approved, supervised, revoked, and renewed under the Charter Schools Act of 1992. (Ed. Code, § 47600 et seq.)[1] If a petition to renew a charter school is not decided within 60 days after receipt, it is deemed approved.

Insolvent school districts are overseen by an administrator appointed by and serving under the supervision of the county superintendent of schools. (§ 41326, subd. (b)(1).) We conclude that when, as here, a petition to renew a charter school is submitted to an insolvent school district while the administrator position is vacant, the county superintendent's duty to act expeditiously on the renewal petition may be delegated to a deputy superintendent. (§ 7.) We affirm the judgment.

_____

[1] Undesignated statutory references are to the Education Code.

2

## FACTS AND PROCEDURAL HISTORY

Appellant Today's Fresh Start, Inc. has operated a charter school in respondent Inglewood Unified School District (IUSD) since 2009. Its charter was renewed in 2012 and 2016. The 2016 renewal occurred when authorities failed to take timely action on appellant's petition for renewal, and it was deemed approved by operation of law. (*Today's Fresh Start Charter School v. Inglewood Unified School Dist.* (2018) 20 Cal.App.5th 276, 280–281, 285 (*TFS II*).)

Appellant operated other schools in the County of Los Angeles (County). County revoked appellant's charter in 2007. (*TFS I, supra,* 57 Cal.4th at pp. 207–211, 230–231 [upholding the revocation].) In 2015, the Los Angeles Unified School District denied appellant's petition for a charter school, describing its history as "unsuccessful."

IUSD has been insolvent since 2012 and is in receivership. The state administered IUSD from 2012 to 2018. In 2017 and 2018, IUSD's state administrator warned appellant about the likely impact of the "severe underperformance of your students" on the renewal of its IUSD charter.

In 2018, respondent Debra Duardo, superintendent of respondent County Office of Education, assumed control of IUSD after the Legislature shifted responsibility for insolvent schools from the state to counties. Superintendent Duardo delegated oversight of IUSD to a deputy superintendent, respondent Erika Torres. After a vetting process, Dr. Duardo appointed Dr. Torres as County Administrator of IUSD (Administrator) effective November 8, 2019.

On August 9, 2019, appellant petitioned to renew its IUSD charter. Acting as deputy superintendent and designee for

Superintendent Duardo, Dr. Torres denied the petition for renewal at an IUSD school board meeting on October 9, 2019.[2] She adopted written findings that cite conflicts of interest; poor academic performance; governance issues; failure to serve special education pupils; and lack of transparency because appellant refused to provide recent academic performance data to evaluate student progress. The record does not show any written or oral objection that Dr. Torres lacked authority to decide the petition.

Appellant sought relief from the County Board of Education, which conducted a de novo assessment of the petition and denied renewal. Next, appellant asked the State Board of Education (SBE) to grant renewal. The Advisory Commission on Charter Schools, which makes recommendations to the SBE, advocated for denial of appellant's petition. On July 9, 2020, the SBE unanimously denied renewal because appellant's County charter was revoked in 2007; appellant engaged in "related party transactions"; and its operational history "exhibits ambiguity, self-dealings, and a lack of transparency." Neither of the administrative decisions state that renewal was automatic because Deputy Superintendent Torres lacked authority to act.

Appellant petitioned for a writ of mandate in August 2020, asking the trial court to set aside the denial of its renewal and deem it approved. The writ petition, as amended, alleges that appellant's charter was automatically renewed because Dr. Torres lacked authority to act before she was appointed

---

[2] Appellant notes that IUSD's counsel referred to Dr. Torres, incorrectly, as "County Administrator." However, appellant's site administrator, Dr. Raul Roman, addressed Dr. Torres as "superintendent," indicating his awareness of the basis for her authority when she denied the petition.

4

Administrator.  Respondents admitted some of the petition's allegations but denied that Dr. Torres lacked authority to act on the renewal application.  Appellant requested judgment on the pleadings.  (Code Civ. Proc., §§ 438, 1094.)

**The Trial Court's Ruling**

The court denied appellant's petition for a writ of mandate.  It rejected appellant's argument that Dr. Torres lacked authority to deny appellant's renewal request.  Interpreting the Education Code, the court concluded that Dr. Torres exercised the powers and duties of the superintendent, as Dr. Duardo's deputy.  The statutes do not show a legislative intent to prohibit the superintendent from delegating powers to a deputy to decide charter school renewal applications.  Dr. Duardo's appointment of Dr. Torres as Administrator, a month later, belies any claim that they sought to subvert the statutory scheme.  The court entered judgment for respondents.

**DISCUSSION**

**1.  Standard of Review**

Courts presume that public officials performed the duties required by law.  (*Cosgrove v. County of Sacramento* (1967) 252 Cal.App.2d 45, 50–51.)  Appellant does not discuss the merits of the denial of its charter school renewal petition.  Instead, it argues that Dr. Torres lacked jurisdiction or authority to deny renewal; therefore, renewal was automatic.  " '[W]e apply the substantial evidence test to the trial court's findings of fact and exercise our independent judgment on legal issues, such as the interpretation of statutory or regulatory requirements.' " (*TFS II, supra,* 20 Cal.App.5th at p. 281.)

5

### 2. Charter School Act Overview

The Legislature has a constitutional duty to provide state citizens with schooling. (*TFS I, supra,* 57 Cal.4th at p. 205.) In 1992, it authorized charter schools "to improve public education by promoting innovation, choice, accountability, and competition." (*Id.* at p. 206; § 47601.) Charter schools operate independently but are subject to public control and oversight, which " 'legitimize[s]' " them "and arguably is constitutionally necessary." (*TFS I*, at p. 206; *Mendoza v. State of California* (2007) 149 Cal.App.4th 1034, 1060–1061.)

A charter school applicant submits a petition to the governing board of a school district. (*TFS I, supra,* 57 Cal.4th at p. 206; § 47605; *United Teachers of Los Angeles v. Los Angeles Unified School Dist.* (2012) 54 Cal.4th 504, 521–522.) Charters are granted "consistent with sound educational practice and with the interests of the community." (§§ 47605, subd. (c), 47605.6, subd. (b); *TFS I*, at p. 206; *United Teachers*, at pp. 522–523.) Charter schools are eligible for state and local funding. (*TFS I*, at p. 206; *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1186.) "Chartering authorities must monitor schools' fiscal condition and academic performance and are authorized to investigate whenever grounds for concern arise." (*TFS I*, at p. 206.)

Charters are renewable. (§ 47607.) A chartering district may deny renewal if performance is inadequate, with written findings listing facts showing that the school has not provided a benefit and closure is in the pupils' best interest. (*Id.,* subd. (c)(7); *TFS II, supra,* 20 Cal.App.5th at p. 283 [district considers academics, finances, and operations to evaluate future success].) If a governing board fails to act within 60 days on a petition for

6

renewal, the renewal is deemed approved. (Cal. Code Regs., tit. 5, § 11966.4, subd. (c).)

### 3. Governance of Insolvent School Districts

Before 2018, when an insolvent school district sought state funding, the *state* superintendent of schools would assume control of the district. Effective September 17, 2018, the law changed. Now, the *county* superintendent of schools, under supervision of the state superintendent, "assumes control of the school district in order to ensure the school district's return to fiscal solvency." (§ 41325, subd. (a), amended by Stats. 2018, ch. 426, § 9.) Once the county superintendent "assume[s] control" of an insolvent district under section 41325, he or she "shall assume all the legal rights, duties, and powers of the governing board of a qualifying school district." (§ 41326, subd. (b).)

Appellant focuses on the following language in the 2018 amendments to the Education Code: "The county superintendent of schools, with concurrence from both the [State] Superintendent and the president of the state board . . . shall appoint an administrator from a pool of candidates identified and vetted by the County Office Fiscal Crisis and Management Assistance Team . . . to exercise the authority described in this subdivision." (§ 41326, subd. (b).) The administrator serves "under the direction and supervision of the county superintendent," who may terminate the administrator. (*Id.*, subd. (b)(1).)[3]

An administrator appointed pursuant to section 41326 is charged with specified responsibilities: To implement substantial changes in a school district's fiscal policies and practices,

---

[3] Alternatively, the county and state superintendents, and president of the SBE may appoint "a trustee with the powers and responsibilities of an administrator." (§ 41325, subd. (c).)

including filing for bankruptcy; revise educational programs to reflect income projections; encourage community members to accept a fair share of the district's fiscal recovery; consult with the district's governing board, employees, and community; consult with and seek recommendations from the county and state superintendents and the county fiscal crisis and management team; and (with approval from the county superintendent) enter agreements to change school district rules, regulations, policies, or practices to implement a recovery plan. (§§ 41325, subd. (b)(1)–(5), 41326, subd. (b)(10)(A)–(F).)

We asked the parties to brief whether the responsibilities listed in sections 41325 and 41326 authorize an administrator to grant or deny charter school renewals. These statutes do not mention charter schools; they focus on *fiscal* matters aimed at returning a district to solvency.

Appellant and respondents reply that an administrator has power to decide charter school renewals. They agree that uncertainty and confusion will result if an administrator is precluded from making decisions about charter schools. They point out that approving or renewing a charter school has fiscal effects on a school district, which obtains state and local funding based on the number of students the charter school recruits. (*TFS I, supra,* 57 Cal.4th at p. 206.)[4]

Appellant observes that the county superintendent "shall assume all the legal rights, duties, and powers" of an insolvent school district's governing board, then appoint an administrator

---

[4] The Legislature recognized the monetary impact of charter schools when it amended the Education Code in 2019 to state that a district under state receivership may deny a charter school petition for fiscal reasons. (§ 47605, subd. (c)(8).)

8

to carry out those rights, duties, and powers.  (§ 41326, subd. (b).) Respondents add that the broad statutory language delegating *all* power over insolvent schools gives the administrator "implied authority to grant or deny a charter school petition."

Appellant suggests that the county superintendent retains little authority once an administrator is appointed.  However, as respondents note, "the county superintendent is the ultimate authority charged with control over an insolvent school district and is not divested of any authority when a county administrator is appointed."

The Education Code supports respondents' reading that the county superintendent retains ultimate power over insolvent districts.  "The appointment of an Administrator pursuant to Section 41326 does not remove any statutory rights, duties, or obligations from the county superintendent of schools.  The county superintendent of schools retains the responsibility to superintend school districts under his or her jurisdiction." (§ 41327.2, subd. (a).)  Moreover, the authority of the county superintendent, the state superintendent, the president of the SBE and the administrator "shall continue" until the insolvent school district has fully recovered from insolvency and satisfied all plans and reporting requirements.  (§ 41326, subd. (f).)

As we shall see, the continuing responsibility of the county superintendent to manage school districts, including insolvent ones, gave Dr. Torres authority to act—in her role as deputy superintendent—before becoming administrator.

### 4. Forfeiture and Exhaustion of Remedies
#### a. *Dr. Torres Did Not Act as Administrator Before Being Appointed*

Respondents assert that appellant forfeited its claim that Dr. Torres purported to act as administrator when she denied the renewal petition. Appellant denies making such a claim. The trial court wrote in its order, "Respondents contend, and Petitioner has not disputed, that Dr. Torres decided the petition purportedly as a deputy or designee of Dr. Duardo." It is not in dispute that Dr. Torres acted as deputy superintendent, not as administrator.

#### b. *Failure to Exhaust Administrative Remedies*

Appellant did not object at the IUSD school board meeting that Deputy Superintendent Torres lacked authority to conduct the meeting or decide its renewal petition. Nor did appellant argue that Dr. Torres lacked authority in administrative proceedings with the County Board of Education and SBE. Respondent asserts that appellant cannot challenge Dr. Torres's authority now after failing to do so in administrative proceedings.

" '[A] party must exhaust administrative remedies before resorting to the courts.' " (*Williams & Fickett v. County of Fresno* (2017) 2 Cal.5th 1258, 1267.) The exhaustion doctrine is a fundamental rule of procedure and "not a matter of judicial discretion." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 293.) "[A]bsent an exhaustion rule, a litigant might have an incentive to 'sandbag.' " (*Hill RHF Housing Partners, L.P. v. City of Los Angeles* (2021) 12 Cal.5th 458, 478–479.) The doctrine applies to charter school decisions. (*American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th

258, 264, 291 [charter revoked for conflicts of interest, fiscal mismanagement, and improper use of public funds].)

Exhaustion of remedies may be excused if a party claims that an agency had no authority to resolve a dispute. (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1081–1082.) Exhaustion is not required if an administrative officer lacked jurisdiction to issue a challenged order. (*City of Lodi v. Randtron* (2004) 118 Cal.App.4th 337, 360.)

The merits of appellant's renewal petition were resolved by three administrative bodies and are not contested on appeal. The sole issue is a legal one requiring statutory interpretation to determine a deputy superintendent's authority to act for the superintendent in an insolvent school district. Under the circumstances, the exhaustion doctrine does not prevent the courts from addressing the challenge to Dr. Torres's authority.

### 5. Dr. Torres Had Authority to Deny Renewal While Serving as Deputy Superintendent

As an insolvent school district, IUSD's rights, duties, and powers were assumed in 2018 by Superintendent Duardo, under amended section 41326. In answer to appellant's petition, respondents admit that (1) Dr. Torres was deputy superintendent of schools when she denied appellant's renewal application on October 9, 2019, and (2) Dr. Torres was appointed administrator one month later, on November 8, 2019. The issue is whether Deputy Superintendent Torres had authority to act on appellant's renewal request before she was appointed administrator.

When appellant filed for renewal, Superintendent Duardo was in the process of selecting an administrator; she observed that the vetting process takes "months." Dr. Duardo is

11

responsible for 1.5 million students in the County. She has many duties to perform. (See, e.g., § 1240.) The superintendent is authorized to appoint a deputy to assist in carrying out these duties. (§ 1290.)

After section 41325 was amended in September 2018, Dr. Duardo assumed control over IUSD and designated Deputy Superintendent Torres to carry out the transfer of responsibility over IUSD from the state to County. In July 2019, the state and County formalized an agreement for Dr. Torres to work under the guidance of the state administrator while control of IUSD was transferred to County. During the transition period, County began searching for an administrator. Interviews for the administrator position began in October 2019.

An administrator must be vetted by a fiscal crisis management team and cannot be appointed by Dr. Duardo without concurrence from the state superintendent of schools and the president of the SBE. (§ 41326, subd. (b).) After the vetting and interview process was completed, Dr. Duardo secured the concurrence of the state officials in November 2019 and appointed Dr. Torres as administrator.

The Education Code did not bar Dr. Torres from acting on behalf of Dr. Duardo while control of IUSD was transferring from the state to County and candidates for administrator were being vetted and interviewed. Dr. Duardo was not required to review the petition herself and could rely on a deputy to carry out her duty: "Whenever a power is granted to, or a duty is imposed upon, a public officer, the power may be exercised or the duty may be performed by a deputy of the officer or by a person authorized, pursuant to law, by the officer, unless this code expressly provides otherwise." (§ 7.)

12

Appellant argues that only an appointed administrator can oversee an insolvent school district or act on a petition for charter school renewal in an insolvent district. In the absence of an administrator, appellant reasons, a county superintendent must *personally* oversee the insolvent district, regardless of how long it takes to locate, evaluate, and approve a qualified person for the administrator position.

Appellant's position is untenable.

A petition to renew a charter school must be acted upon within 60 days; otherwise, it is approved by operation of law.[5] The Legislature has made clear that renewal should be denied if it is in the best interests of a district's pupils. (§ 47607, subd. (c)(7).) The well-being of children cannot be sacrificed if an unmeritorious petition to renew a charter school is approved by operation of law merely because an administrator is not in place to review it.

An administrator might retire, resign, die in office or, as here, not yet be appointed when a renewal petition is filed. Given the brevity of the 60-day limit for acting on a renewal petition and the complexity of vetting and appointing a new administrator, we decline to interpret the Education Code to mean that a charter school renewal application can escape review in the absence of an administrator. Similarly, a superintendent

---

[5] The regulation reads: "If within 60 days of its receipt of a petition for renewal, a district governing board has not made a written factual finding as mandated by Education Code section 47605[, subdivision] (b), the absence of written factual findings shall be deemed an approval of the petition for renewal." (Cal. Code Regs., tit. 5, § 11966.4, subd. (c).) Respondents question the validity of this regulation, a point we need not reach to resolve the appeal.

13

may be incapacitated before appointing an administrator, yet under appellant's reading of the law, an insolvent school district would be paralyzed from taking any formal action through a deputy superintendent.

Even after an administrator is appointed, a superintendent retains "statutory rights, duties, [and] obligations" and "the responsibility to superintend school districts under his or her jurisdiction." (§ 41327.2, subd. (a); see also § 41326, subd. (f) [superintendent and administrator have continuing authority until an insolvent district recovers].) The county superintendent can, contrary to appellant's belief, act through a deputy.

State law has long recognized a deputy's authority. "The deputy of a public officer, when exercising the functions or performing the duties cast by law upon such officer, is acting for his principal or the officer himself. The deputy's official acts are always those of the officer. He merely takes the place of the principal in the discharge of duties appertaining to the office. When, therefore, the law provides that it shall be the duty of a certain public officer to do or perform certain public official acts, the deputy of such officer, if there be one, is necessarily included within the terms of the provision. . . . In brief, a deputy under a public officer and the officer or person holding the office are, in contemplation of law and in an official sense, one and the same person . . . and his (the deputy's) acts are, therefore, not his, but those of the holder or incumbent of the office." (*Sarter v. Siskiyou County* (1919) 42 Cal.App. 530, 536.)

Superintendent Duardo's duty to appoint an administrator did not divest her of the ability to have a deputy supervise an insolvent school district before an appointment is made. Appellant suggests that because school district board members

14

cannot delegate "decision-making authority" to a deputy, a superintendent cannot do so. Appellant is making a false equivalence. Public officers may delegate powers when "a statute expressly allows them to do so." (*City of Los Angeles v. Superior Court* (2013) 56 Cal.4th 1086, 1094–1095.) The Education Code expressly allows a superintendent to appoint a deputy (§ 1290) and exercise power through a deputy (§ 7).

Appellant cites section 41326, subdivision (a) for the proposition that a superintendent cannot delegate authority. That provision has nothing to do with a superintendent's ability to delegate authority.[6] It only states that a school district's acceptance of money constitutes its agreement to statutory conditions on emergency apportionments.– It is not a specific statute purporting to override the general rule stated in section 7.

---

[6] It reads: "Notwithstanding any other provision of this code, the acceptance by a school district of an apportionment made pursuant to Section 41320 that exceeds an amount equal to 200 percent of the amount of the reserve recommended for that school district under the standards and criteria adopted pursuant to Section 33127 constitutes the agreement by the school district to the conditions set forth in this article. Before applying for an emergency apportionment in the amount identified in this subdivision, the governing board of a school district shall discuss the need for that apportionment at a regular or special meeting of the governing board of the school district and, at that meeting, shall receive testimony regarding the apportionment from parents, exclusive representatives of employees of the school district, and other members of the community. For purposes of this article, 'qualifying school district' means a school district that accepts a loan as described in this subdivision."

The Education Code does not require a superintendent—especially one responsible for overseeing a million students—to tend to the operations of an insolvent district during the months needed to evaluate candidates for administrator. As the appointed deputy of the superintendent, Dr. Torres was responsible for overseeing the insolvent IUSD.

Appellant argues that use of a deputy superintendent during the search for an administrator creates a conflict because it means the superintendent will be holding incompatible offices. (Gov. Code, § 1099.) We are not persuaded. Even *after* an administrator is named, the superintendent still exercises statutory rights, duties, and obligations (Ed. Code, § 41327.2, subd. (a)) and may terminate the administrator (Ed. Code, § 41326, subd. (b)(1)). The Legislature did not perceive a conflict between a superintendent's duty to review all school districts while also overseeing an insolvent district. Delegating authority to a deputy changes nothing because the deputy is acting *as* the superintendent. There are not two incompatible offices.

Appellant describes "what if" hypotheticals involving rogue officials. However, courts presume that public officials perform their duties. (*Cosgrove v. County of Sacramento, supra,* 252 Cal.App.2d at pp. 50–51.) The parade of horribles envisioned by appellant did not occur. What happened was that the Legislature amended the law in 2018 to shift responsibility for insolvent school districts from the state to counties. Unsurprisingly, this shift did not occur overnight. During the transition phase, the state and County formally agreed that Dr. Torres would work under the guidance of the state administrator. Soon after, she was appointed County administrator after a vetting process to

satisfy section 41326.  There is nothing nefarious about the process.[7]

Nothing in the Education Code expressly provides that a county superintendent must personally attend to the operations of an insolvent school district, nor does it expressly state that a deputy cannot act for the superintendent under Education Code section 7.  Education Code section 41326 discusses the superintendent's authority and the process for appointing an administrator; it does not contain express language limiting the power of a superintendent to delegate powers to a deputy.  Education Code section 7 does not limit the deputy's powers to nondiscretionary decisions.  The powers and duties of a deputy are the same as the superintendent's powers and duties.  (Gov. Code, § 1194 ["each deputy possesses the powers and may perform the duties attached by law to the office of his principal"].)

We conclude that in the absence of an administrator, the deputy superintendent appointed by the superintendent exercised authority to deny appellant's petition to renew its IUSD charter.  Appellant's renewal petition was thoroughly reviewed.  Appellant writes that after Dr. Torres denied the petition, full assessments of the petition—not mere substantial evidence reviews—were done by the County and the State Boards of Education, as if the petition had been submitted to them in the first instance; appellant had, in its words, "a second and third 'bite of the apple.' "  Appellant enjoyed the full panoply of rights afforded by the Education Code.

---

[7] Appellant relies on a case in which an agency failed "to comply with its regularly adopted 'Personnel Policy' rules."  (*Civil Service Assn. v. Redevelopment Agency* (1985) 166 Cal.App.3d 1222, 1225.)  The case is inapposite.

### 6. Automatic Renewal

A petition for renewal must be resolved expeditiously. "The strict timeline for denial of a renewal petition is justified by the need for certainty during the school year. Parents, students, and teachers need ample notice whether the charter school will be authorized to continue operation for the following year. Sufficient time must be available for the charter school to pursue all necessary review processes if the renewal petition is denied." (*TFS II, supra,* 20 Cal.App.5th at p. 285.)

Charter school renewals are governed by the same standards as original applications to form a charter school. A petition must be promptly decided and cannot be denied unless the governing board "makes written factual findings" about the charter school's educational program. (§§ 47605, subd. (c), 47607, subd. (c)(7).) IUSD staff wrote a 19-page report detailing reasons to deny appellant's renewal petition. Deputy Superintendent Torres adopted this report "as the district's written findings to support the denial of the petition."[8]

Appellant asserts in the last two pages of its opening brief that only Superintendent Duardo or an administrator could deny the petition; because Dr. Duardo did not do so, and could not delegate her duty, the charter automatically renewed. This reflects the claim made in appellant's writ petition. As discussed in part 5, *ante*, Deputy Superintendent Torres had authority to

---

[8] We do not address the parties' discussion of the timing or sufficiency of the written findings, a topic that exceeds the scope of the writ petition and the trial court's ruling. We do not address Dr. Torres's qualifications for the administrator position for the same reason.

deny appellant's renewal petition and did so within 60 days.  The petition was not approved by operation of law.

### DISPOSITION

The judgment is affirmed.  Appellant to bear all costs on appeal.

NOT TO BE PUBLISHED.


KWAN, J.*

We concur:


ASHMANN-GERST, Acting P. J.


CHAVEZ, J.

---

* Judge of the Superior Court of Los Angeles County under appointment by the Chief Justice pursuant to article VI, section 6 of the California Constitution.