Filed 12/12/25  Amalgamated Transit Union etc. v. Santa Clara Valley Transp. Auth. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| AMALGAMATED TRANSIT UNION LOCAL 265,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>SANTA CLARA VALLEY TRANSPORTATION AUTHORITY,<br><br>Defendant and Respondent. | H052725<br>(Santa Clara County<br>Super. Ct. No. 24CV430088) |

This appeal arises from the denial of a petition to compel arbitration. Amalgamated Transit Union Local 265 (Local 265 or union) petitioned to compel arbitration of nine grievances against Santa Clara Valley Transportation Authority (VTA).  The trial court found the grievances were not arbitrable under the provisions of the parties' collective bargaining agreement.  Local 265 contends the trial court erred under case precedent and California's public policy favoring arbitration, which require courts to give broad effect to labor arbitration agreements.  The union asserts the arbitrator, not the court, should in the first instance interpret any relevant limitations on or exclusions from arbitrability under the agreement.

Applying the plain language of the collective bargaining agreement between the parties, we conclude the grievances in dispute are not arbitrable. We therefore affirm the denial of the petition to compel arbitration.

## I. FACTS AND PROCEDURAL BACKGROUND

*A. Collective Bargaining Agreement*

The collective bargaining agreement (CBA, or the agreement) between the parties is titled "agreement between AFL-CIO division 265 Amalgamated Transit Union and the Santa Clara Valley Transportation Authority, September 9, 2019 – September 8, 2022." (Some capitalization omitted.)

Section 6 of the CBA, titled "[p]robation" addresses probation for employees, defined as "a trial period during which VTA is to judge the ability, competency, fitness, and other qualifications of employees to do the work for which they are employed." It provides that "[a]ll new employees shall be on probation immediately following their date of hire for the period of formal training and for 180 calendar days following completion of said training" and allows for extension of the probation period "by mutual agreement" of the parties under specified conditions. Section 6 further provides, "[n]ew probationary employees may be disciplined or discharged at the total discretion of VTA and such actions shall not be subject to review under any provision of this [a]greement."[1]

---

[1] Though not at issue in this appeal, the use of the adjective "[n]ew" in this sentence appears to limit the application of the exclusionary provision to apply to "[n]ew probationary employees" as opposed to employees who are on probation because they have been promoted or transferred to a new classification. As section 6 specifies, "[a]ll new employees shall be on probation immediately following their date of hire for the period of formal training and for 180 calendar days following completion of said training," while "[a]ll employees who are promoted or transferred to a new classification shall be on probation immediately following their date of promotion or

Section 19, titled "[g]rievances and [d]ispute [r]esolution" governs the grievance procedures. Section 19.1 defines a grievance, in relevant part, "as any controversy or dispute between VTA and the [u]nion concerning the interpretation or application of this labor [a]greement, excluding cases of discipline and discharge, which" are addressed in section 18. Section 19.2 states that a grievance "must be filed in writing with the designated representative of VTA or the [u]nion . . . within 30 calendar days after the occurrence or discovery of the alleged grievance," and section 19.3 sets forth the procedures for an informal hearing and written decision. Section 19.4 provides that "[a]ll time limits may be extended in writing and for good cause by mutual agreement." Under section 19.5, a party's failure to adhere to the time limitations governing the grievance process "shall cause forfeiture of that party's case."

Section 20, titled "[a]rbitration" governs arbitration, including prearbitration mediation, notice and procedure, applicable rules, and costs. If a party is dissatisfied with the written decision resulting from the grievance process, section 20.3 provides that either party may request arbitration within 90 days of receipt of the written decision or response from the informal hearing. Under section 20.2, "[a]ny grievance, or any discipline or discharge action which cannot be resolved" through the processes stated in sections 18 and 19 may be submitted to arbitration upon compliance with the conditions of section 20.

*B. The Subject Grievances*

Between January and October 2022, Local 265 filed nine individual grievances alleging violations of the CBA. For each of the nine grievances,

---

transfer for the period of formal training and for 180 calendar days following completion of said training."

VTA held an informal hearing and rendered a written decision denying the grievance.

The nine grievances are as follows: (1) grievance No. 2022-ATU-0007, filed on January 21, 2022, challenging VTA's random video monitoring of light rail operators; (2) grievance No. 2022-ATU-0039, filed on May 6, 2022, challenging VTA's denial of an overtime request; (3) grievance No. 2022-ATU-0053, filed on May 16, 2022, challenging VTA's denial of an employee's requested work classification; (4) grievance No. 2022-ATU-0049, filed on May 20, 2022, challenging VTA's discharge of a probationary employee; (5) grievance No. 2022-ATU-0061, filed on June 13, 2022, challenging VTA's denial of an employee's request for compensation; (6) grievance No. 2022-ATU-0065, filed on July 11, 2022, challenging VTA's denial of an employee's requested work assignment; (7) grievance No. 2022-ATU-0072, filed on July 19, 2022, challenging VTA's denial of an employee's requested work assignment; (8) grievance No. 2022-ATU-0084, filed on August 30, 2022, challenging VTA's denial of an employee's requested compensation; and (9) grievance No. 2022-ATU-0101, filed on October 14, 2022, challenging VTA's termination of an employee from a training program.

One of the nine grievances (grievance No. 2022-ATU-0049, filed on May 20, 2022, hereafter the "section 6 grievance") arose from the discharge of a new probationary employee. According to VTA's statement of decision after the initial hearing, the employee was discharged for failure to meet acceptable attendance standards after she failed to produce the documentation required to support her requested probation extension. As to each of the other eight grievances (hereafter, the "section 19 grievances"), VTA maintained they were filed outside of the 30-day window mandated by section 19.2, requiring a grievance to " 'be filed in writing . . . within 30

4

calendar days after the occurrence or discovery of the alleged grievance.' " (Italics omitted.) The VTA declared in denying each of those grievances that they were forfeited for untimeliness.

Local 265 requested in writing to proceed to arbitration on each of the nine denied grievances, but VTA refused to proceed to arbitration.

*C. Petition to Compel Arbitration*

In January 2024, the union petitioned the trial court to compel arbitration of the nine grievances (petition). The petition alleged that at all relevant times, Local 265 complied with the grievance provisions of the CBA, but VTA refused to comply with the agreement by refusing to submit each of the grievances to an arbitrator for resolution.

The union moved for summary judgment on its petition. VTA opposed the motion. On procedural grounds, VTA argued that summary judgment was an improper vehicle to resolve the petition and the motion should be treated as a petition to compel arbitration. On the merits, VTA maintained that the union did not have "an unqualified entitlement to arbitrate grievances" under the CBA, which by its terms rendered the nine underlying grievances "*not* arbitrable." Specifically, VTA asserted that the grievance of the employee who was released from employment during her probationary period due to attendance issues was not arbitrable under section 6 of the CBA. VTA asserted that the union forfeited the remaining eight grievances pursuant to section 19.5 of the CBA, rendering those grievances not arbitrable.

In reply, the union argued that once the trial court determines there is a valid agreement to arbitrate the dispute, questions requiring interpretation of the CBA, including the provisions on probationary employees and the grievance procedures, are the province of the arbitrator. For example, as to

the section 19 grievances, the union argued that what constitutes an " 'occurrence or discovery' " for purposes of deciding whether the grievance was timely filed requires the court to interpret the substantive provisions of the CBA. The union further asserted as to these grievances that case authority provides that procedural deficiencies, such as an alleged failure to follow time limits related to submission of a grievance, do not result in waiver of the right to arbitration.

After a hearing, the trial court issued a written order denying the petition. The order rejected summary judgment as the procedure to resolve a petition to compel arbitration, noting that a petition to compel arbitration "is a summary proceeding in which the court sits as a trier of fact, weighing the evidence, and determines the existence of an applicable arbitration agreement or any defense thereto 'by a preponderance of the evidence.' " (Citing *Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978, italics omitted.)

The trial court explained that after reviewing the relevant agreement provisions, it concluded the nine grievances "are not arbitrable under the CBA." The court found the section 6 grievance was not subject to arbitration under the section 6 exclusion from review for discipline or discharge of " '[n]ew probationary employees.' " The court found, as to the eight section 19 grievances, that "VTA has shown—and Local 265 has not disputed—that all of them were filed more than 30 days after the occurrence or discovery of the grievance." Pursuant to section 19.5 of the CBA, which provides that " '[t]he failure of either party to adhere to the time limitations in this [s]ection shall cause forfeiture of that party's case,' " each of the eight grievances was forfeited, leaving nothing to arbitrate. The court further rejected the union's argument concerning interpretation of the CBA and held that, unless the

6

agreement clearly delegates the question of arbitrability to an arbitrator, "the court decides arbitrability."

The trial court denied the petition and set the matter for an order to show cause regarding dismissal. This appeal followed.[2]

## II.  DISCUSSION

Local 265 challenges the trial court's determination of arbitrability. The union argues that VTA asserted affirmative defenses to the petition to compel arbitration that present interpretative questions for decision by the arbitrator, not by the court. VTA counters that provisions of the CBA expressly exclude the nine grievances at issue from any entitlement to arbitration.

### A.  Governing Legal Principles and Standard of Review

Under the California Arbitration Act (the Act) (Code Civ. Proc.,[3] § 1280 et seq.), "a trial court faced with a petition to compel arbitration 'shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that:  [¶]  (a) The right to compel arbitration has been waived by the petitioner; or  [¶]  (b) Grounds exist for the revocation of the agreement.'  (*Id.,* § 1281.2.)  The act further provides that '[i]f the court determines that a written agreement to arbitrate a controversy exists, an order to arbitrate such controversy may not be refused on the ground that the petitioner's contentions lack substantive merit.' "  (*United Teachers of Los Angeles v. Los Angeles Unified School Dist.* (2012) 54 Cal.4th 504, 516 (*United Teachers*); § 1281.2.)  The Act thus reflects "California's 'long-established and well-

---

[2] An order dismissing or denying a petition to compel arbitration is an appealable order.  (Code Civ. Proc., § 1294, subd. (a).)

[3] All further unspecified statutory references are to the Code of Civil Procedure.

7

settled policy favoring arbitration as a speedy and inexpensive means of settling disputes.' " (*Rockefeller Technology Investments (Asia) VII v. Changzhou SinoType Technology Co., Ltd.* (2020) 9 Cal.5th 125, 146.)

At the same time, "a court will not grant a petition to compel arbitration filed pursuant to [] section 1281.2 if the subject matter to be arbitrated is not within the scope of the arbitration agreement." (*United Teachers*, *supra*, 54 Cal.4th at p. 516.) A court "will look to the arbitration agreement itself to determine its scope." (*Ibid.*) "Unless the parties have clearly and unmistakably provided otherwise, the preliminary question of whether parties to a collective bargaining agreement have agreed to arbitrate a particular dispute is decided by the court, not the arbitrator." (*Amalgamated Transit Union Local 1277 v. Los Angeles County Metropolitan Transportation Authority* (2003) 107 Cal.App.4th 673, 684 (*Amalgamated Transit*).) Furthermore, " ' "[d]oubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration." ' " (*Ibid.*)

In reviewing a petition to compel arbitration, the trial court "must determine whether the parties entered into an enforceable agreement to arbitrate that reaches the dispute in question, construing the agreement to the limited extent necessary to make this determination." (*California Correctional Peace Officers Assn. v. State of California* (2006) 142 Cal.App.4th 198, 204–205 (*California Correctional*).)

Case law frequently references a "presumption in favor of arbitration." (*Amalgamated Transit*, *supra*, 107 Cal.App.4th at p. 684; accord, *California Correctional*, *supra*, 142 Cal.App.4th at p. 205; *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 971 (*Engalla*).) However, the California Supreme Court has clarified that "the policy ' "favoring" '

8

arbitration is not one of promoting arbitration over litigation, but instead of ensuring that arbitration agreements are not disfavored, i.e., that they are treated like other contracts." (*Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, 579 (*Quach*).) Thus, the court should order the parties to arbitrate " ' "unless it is clear that the arbitration clause cannot be interpreted to cover the dispute." ' [Citation.] 'However, there is no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate.' " (*Amalgamated Transit*, at pp. 684–685; see also *United Public Employees v. City and County of San Francisco* (1997) 53 Cal.App.4th 1021, 1026 (*United Public*).)

"The right to arbitration ultimately depends upon the terms of the collective bargaining agreement, and a petition to compel arbitration is essentially a suit in equity seeking specific performance of that agreement." (*Amalgamated Transit*, *supra*, 107 Cal.App.4th at p. 685, citing *United Public*, *supra*, 53 Cal.App.4th at p. 1026; *Engalla*, *supra*, 15 Cal.4th at p. 972 ["an arbitration agreement must be enforced on the basis of state law standards that apply to contracts in general"].)

A trial court adjudicates a petition for arbitration in a summary proceeding pursuant to sections 1281.2 and 1290.2. (*Engalla*, *supra*, 15 Cal.4th at p. 972.) "The petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense. [Citation.] In these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination." (*Ibid*.)

"When a trial court's order is based on a question of law, we review the denial de novo. [Citation.] Decisions on issues of fact are reviewed for substantial evidence. [Citation.]' [Citation.] 'Where . . . the evidence is not in conflict, we review the trial court's denial of arbitration de novo.' " (*Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 764–765 (*Mendoza*).)

### B. Analysis

Local 265 relies on these principles to argue that the broad contractual provisions in the CBA must be liberally construed, and courts should not restrict the application of broad arbitration provisions. The union cites cases including *United Transportation Union v. Southern Cal. Rapid Transit Dist.* (1992) 7 Cal.App.4th 804 (*United Transportation*) and the California Supreme Court's decision in *Posner v. Grunwald-Marx, Inc.* (1961) 56 Cal.2d 169 (*Posner*) as support. VTA counters that the cited cases are inapposite and the cited legal principles inapplicable because, under the language of the agreement, the parties to the CBA agreed to exclude the disputes at issue. VTA also maintains that substantial evidence supports the trial court's finding that the section 19 grievances were not timely filed, and the union has forfeited any argument to the contrary.

"[A] written agreement to arbitrate a controversy" (§ 1281.2) undoubtedly exists between Local 265 and VTA. We review de novo the language of the CBA to determine whether the parties agreed to exclude certain disputes from the right to arbitrate. Put differently, we independently review the trial court's determination that the subject matter to be arbitrated is outside the scope of the arbitration agreement or expressly excluded (*United Teachers*, *supra*, 54 Cal.4th at p. 516; *Amalgamated Transit*, *supra*, 107 Cal.App.4th at p. 684), deferring to any factual findings

10

by the trial court where supported by substantial evidence in the record (*Mendoza, supra*, 75 Cal.App.5th at p. 765).

Local 265 points to section 20.2 of the CBA as the source of the parties' broad right to arbitration. It argues that, as set forth in that provision, " '[a]ny grievance, or any discipline or discharge action which cannot be resolved in accordance with the provisions of [s]ection 18 or 19' " may be submitted to arbitration so long as the aggrieved party " 'request[s] an arbitration within 90 days after receipt of the decision o[r] response from the informal hearing." Local 265 contends this language is comparable to the language of the labor agreements in *Posner* and *United Transportation*.

Both *Posner* and *United Transportation* involved reversals of a trial court decision denying a petition to compel arbitration. In *Posner*, the employee union sought to compel arbitration of the employer's refusal to pay vacation or holiday pay for employees who were terminated upon relocation of the employer's facilities. (*Posner, supra*, 56 Cal.2d at p. 173.) The trial court denied the petition to compel arbitration because the wording of the labor agreement was " 'without ambiguity as to vacation pay and holiday pay' " and did not apply to circumstances of termination due to relocation. (*Id.* at p. 174.) After examining the language of the agreement and case authority, including a series of United States Supreme Court decisions concerning the interpretation of collective bargaining agreements,[4] our high court reversed the denial of the petition. (*Id.* at p. 190.)

---

[4] The three cases reviewed by the California Supreme Court in *Posner* are *United Steelworkers of American v. American Mfg. Co.* (1960) 363 U.S. 564, *United Steelworkers of America v. Warrior & Gulf Co.* (1960) 363 U.S. 574, and *United Steelworkers of America v. Enterprise Wheel & Car Corp.* (1960) 363 U.S. 593 (together, the Steelworkers trilogy). Local 265 argues that the principles announced in the Steelworkers trilogy "have in effect been

11

The *Posner* court noted the broad language of the collective bargaining agreement, which provided for arbitration of any " 'complaint, grievance or dispute arising between the parties relating directly or indirectly to the provision(s) of this agreement." (*Posner*, *supra*, 56 Cal.2d at p. 173.) The court explained that the agreement expressed the parties' intent "to include within the arbitration clauses . . . all clauses of the contract, and all disputes arising under the agreement." (*Id*. at p. 184.) Such an expansive arbitration provision means that "all disputes as to the meaning, interpretation and application of any clause of the collective bargaining agreement, even those that prima facie appear to be without merit, are the subject of arbitration." (*Ibid*., fn. omitted.) The *Posner* court reasoned that "it would be unreasonable to conclude from the face of the collective bargaining agreement that the controversy between [the] union and [the employer], does not fall within the scope of arbitration." (*Id*. at p. 186.) Unable to conclude that the controversy was clearly outside the scope of the arbitration clause, the court reversed the denial of the petition to compel arbitration. (*Id*. at p. 190.)

*United Transportation* involved a dispute over the right to arbitration of a part-time employee who took a pregnancy leave of absence. (*United Transportation*, *supra*, 7 Cal.App.4th at p. 807.) The employer refused to arbitrate, asserting that the relevant labor arbitration provisions for leaves of absence did not cover part-time employees; the trial court agreed and denied the union's petition to compel arbitration. (*Ibid*.)

The appellate court reversed, citing the reasoning of *Posner* and concluding that the provisions of the agreement must be construed broadly.

---

absorbed into California law." We agree that the principles articulated in this trilogy provide guidance to California courts. (*Posner*, *supra*, 56 Cal.2d at pp. 175–176, 183–184.)

(*United Transportation*, *supra*, 7 Cal.App.4th at pp. 810–811.) The court reasoned that the agreement, like in *Posner*, contained "broad contractual provisions for arbitration" (*id.* at p. 810) and that article 50 of the agreement, which specified the articles applicable to part-time employees, made those broad provisions applicable to the employee on pregnancy leave. (*Id.* at pp. 810–811.)

Although the agreement did not expressly extend the provisions covering leaves of absence to part-time employees, the court agreed with the union that other restraints on the employer's conduct were applicable to part-time employees under the broad arbitration provisions. (*United Transportation*, *supra*, 7 Cal.App.4th at pp. 807, 812.) The court concluded that "whether the collective bargaining agreement contains restraints on the [employer]'s ability to discharge persons in [the part-time employee]'s position is a claim, dispute or controversy that arises out of the application and interpretation of the terms of the agreement" and the "petition to compel arbitration should have been granted." (*Id.* at p. 812.)

These cases reflect the fundamental rule that, while the trial court determines whether a claim falls within the arbitration provision, it cannot deny the right to arbitration on the basis that the claim lacks merit under the terms of the arbitration agreement. (*United Teachers*, *supra*, 54 Cal.4th at pp. 516, 517.) But these cases also recognize that the court may deny arbitration where the parties have excluded certain grievances from an otherwise broad right to arbitration. As stated by our Supreme Court in *Posner*, "the parties may exclude a particular grievance from arbitration either in the collective bargaining agreement or in a written collateral agreement." (*Posner*, *supra*, 56 Cal.2d at p. 175.)

Upon independent review of the CBA, we agree that there is a right to arbitration under section 20.2, similar to that established by the agreements in *Posner* and *United Transportation.* Nevertheless, that broad right to arbitration is expressly limited by the grievance and discipline or discharge procedures of sections 18 and 19 and the exclusion set forth in section 6. Specifically, section 20.2 of the CBA provides for arbitration of "[a]ny grievance . . . which cannot be resolved in accordance with the provisions of [s]ection 18 or 19," and section 19.5 states that a party's failure to adhere to the time limit for filing a grievance "shall cause forfeiture of that party's case." Further, under section 6, new probationary employees may be discharged at VTA's "total discretion" and "such actions shall not be subject to review under any provision of the [a]greement."

It is the trial court, not the arbitrator, that should ascertain the scope of the agreement in deciding the initial question of arbitrability. (*United Teachers*, *supra*, 54 Cal.4th at p. 516.) We reject Local 265's suggestion that whether the agreement "provides an absolute bar to any grievance is a matter reserved for the arbitrator."

We look to the terms of the arbitration agreement itself to determine whether the subject matter to be arbitrated falls within the scope of the agreement to arbitrate.[5] (*United Teachers*, *supra*, 54 Cal.4th at p. 516.) We construe the agreement like other contracts to give effect to the intention of the parties. (*Mendoza, supra*, 75 Cal.App.5th at p. 764.) This requires us to

---

[5] We deny Local 265's unopposed request for judicial notice of an unpublished appellate opinion, *Santa Clara Valley Transportation Authority v. Amalgamated Transit Union, Division No. 265* (May 28, 2002, H022834). Although the unpublished decision is a proper subject of judicial notice pursuant to Evidence Code sections 452, subdivision (d) and 459, subdivision (a), the appellate opinion in an unrelated case addressing distinctly different issues is not relevant to this court's resolution of the instant appeal.

consider the entire agreement, giving effect to each provision. (*TRB Investments, Inc. v. Fireman's Fund Ins. Co.* (2006) 40 Cal.4th 19, 27.)

Contrary to the union's contention, section 20 of the CBA does not define what may be arbitrated solely as "[a]ny grievance, or any discipline or discharge action." Instead, section 20.2 limits arbitration of those categories to disputes "which cannot be resolved in accordance with the provisions of [s]ection 18 or 19." Construing the scope of section 20, therefore, requires consideration of the procedures set forth in sections 18 and 19. Furthermore, the right to arbitration pursuant to section 20 must be construed in light of the agreement as a whole, including section 6.

The exclusionary language of section 6 and procedural prerequisites of section 19 distinguish this case from the broad arbitration agreements construed in *Posner* and *United Transportation*. In *Posner,* the agreement provided for arbitration of a grievance or dispute " ' relating directly or indirectly to the provision(s) of this agreement whether concerning discharges *or any other terms thereof.' "* (*Posner*, *supra*, 56 Cal.2d at p. 173, italics added.)

Beginning with the section 6 grievance, the exclusion of probationary employees from certain rights under the CBA is unambiguous. Section 6 states that new probationary employees may be disciplined or discharged at VTA's "total discretion" and "such actions shall not be subject to review under any provision of the [a]greement." Moreover, the scope of "what may be arbitrated" (capitalization omitted) pursuant to section 20.2 of the agreement is couched only in terms of those grievance, discharge, or discipline actions subject to sections 18 and 19 and does not mention section 6. Under the terms of the agreement examined in *Posner*, the court could not conclude from the face of the arbitration agreement that the holiday and vacation

15

provisions precluded arbitration of the employees' pay claims due to relocation of the plant. (*Posner*, *supra*, 56 Cal.2d at p. 186 ["[I]t cannot be said from a reading of the holiday and vacation provisions that their meaning is so clear that there is nothing to arbitrate."].) In contrast, the section 6 exclusion in the agreement at issue here explicitly takes the discipline or discharge of new probationary employees entirely outside section 20's provisions for arbitration, while section 20.2 limits arbitrable disputes to those which cannot be resolved pursuant to sections 18 and 19.

The exclusion of disciplinary or discharge action against new probationary employees from the review mechanisms otherwise available under the CBA also distinguishes this case from *United Transportation*, since the employer's treatment of the part-time employee in that case remained generally subject to the broader provisions of the labor agreement. That the agreement's provisions governing leaves of absence were not directly applicable to part-time employees did not preclude the employee from invoking the right to arbitration based on other, applicable provisions of the agreement. (*United Transportation*, *supra*, 7 Cal.App.4th at p. 812.) By contrast, the plain language of section 6 explicitly removes from review under the CBA actions by VTA to discipline or discharge the new probationary employee.

Local 265 contends that this reading of the agreement ignores other language in section 6, which provides that "[i]f an employee is absent from work for good cause during the probationary period, probation may be extended to meet the required probationary period by mutual agreement of VTA and the [u]nion to allow the employee to complete the full probationary period as defined in this [s]ection." The union argues that like the agreement provisions in *United Transportation* that placed restraints on the employer's

16

actions against part-time employees, this language limits the discretion of VTA by enabling the parties to agree to allow an employee who has been absent for good cause to complete the full probationary period. The union asserts that the provisions pertaining to "good cause" and "mutual agreement" of the parties indicate that the parties did not intend for probationary discharge to be wholly excluded from arbitration, or "suggests at minimum a doubt as to whether the parties intended for certain probationary discharge disputes to be arbitrable." The union argues that any doubt as to whether the dispute is arbitrable must be resolved in favor of arbitration. (See *Amalgamated Transit*, *supra*, 107 Cal.App.4th at p. 684; *Posner*, *supra*, 56 Cal.2d at p. 175.)

We disagree. Applying the ordinary rules of contract interpretation (*Amalgamated Transit*, *supra*, 107 Cal.App.4th at p. 684), section 6 provides no avenue for a new probationary employee to obtain review of a discharge decision pursuant to the terms of the CBA. The language referenced by Local 265 affords a mechanism for the employee and VTA to mutually agree to extend the probationary period so the employee can fulfill the employment requirement. But even assuming a valid agreement to extend an employee's probationary period, "[n]ew probationary employees may be disciplined or discharged at the total discretion of VTA and such actions shall not be subject to review under any provision of this [a]greement."[6] The plain meaning of

---

[6] In its reply brief, Local 265 suggests that "a dispute may exist over whether an employee had completed probation, or whether the employer, in terminating a probationary employee, violated another provision of the CBA," arguably precluding application of section 6 exclusionary language to the probationary employee. We do not address the effect on arbitrability of the theoretical possibility that the parties might disagree about the probationary status of an employee, since there is no indication in the briefing or the

17

the provision offers no support for the argument that extending the probationary period modifies or mitigates the unambiguous exclusion of disciplinary and discharge decisions by VTA with respect to new probationary employees from being "subject to review" under the agreement.

The trial court therefore did not err in denying the petition to compel arbitration as to the section 6 grievance.

Turning to the section 19 grievances, Local 265 disputes the trial court's finding that the eight grievances were untimely filed. Moreover, the union contends that whether a grievance complied with time limits in the labor agreement is itself an issue subject to arbitration.

Citing United States Supreme Court precedent, the union maintains that while the court determines gateway questions of arbitrability, " ' "procedural" questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator, to decide." (*Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 84 (*Howsam*); see also *John Wiley & Sons, Inc. v. Livingston* (1964) 376 U.S. 543, 557 ["Doubt whether grievance procedures . . . have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration."].) The union argues that because the arbitration provisions under section 20 clearly apply to each of the eight grievances at issue, the question of whether the grievances were timely submitted should be a matter for the arbitrator. The union further maintains that California courts distinguish timely filing of a grievance under the deadline set by a collective bargaining agreement from timely

record that such a dispute existed here. Nor does the union contend the employee was not a "new employee[]" under section 6.

18

filing of a request for arbitration, holding that only the latter effects waiver of the claim under section 1281.2.

VTA counters that Local 265 has forfeited any argument that it timely submitted the section 19 grievances and, in any event, substantial evidence supports the trial court's determination of that fact. Local 265 responds that even if VTA is correct in asserting that the union failed to dispute the issue of timeliness as applied to the grievances, this fact only confirms there was no factual dispute or extrinsic evidence in issue, such that this court's review of the timeliness issue is de novo.

Forfeiture "results when a party fails to preserve a claim by raising a timely objection." (*Lynch v. California Coastal Com.* (2017) 3 Cal.5th 470, 476.) We agree with VTA that Local 265 has forfeited on appeal the argument that it timely submitted the eight grievances at issue.

In the trial court, the union neither disputed the allegation that each of the section 19 grievances was untimely nor proffered evidence to contravene VTA's showing of forfeiture of those grievance claims under section 19.5 of the CBA.[7] Instead, the union argued only that whether the grievances were

_____

[7] In support of its assertion that the eight grievances were untimely, resulting under section 19.5 in "forfeiture of that party's case" VTA submitted the declaration of its counsel, Richard North, and exhibits containing excerpts of documents related to each of the grievances. Many of the exhibits contain copies of the grievance tracking form with the date received and a copy of the hearing decision. Some of the exhibits additionally contain correspondence from Local 265 to VTA requesting an informal hearing and documents related to the claim. Local 265 did not proffer any contrary evidence or attempt to argue in its reply brief in the trial court that the documentary exhibits failed to support VTA's position. On appeal, Local 265 asserts only that "the record shows that the [u]nion has *asserted* that each of the grievances were filed timely" (italics added), citing to the petition itself

timely (e.g., based on what constitutes an "occurrence or discovery" within the meaning of section 19 of the CBA) was a question to be resolved in arbitration.

The trial court found that Local 265 had not disputed VTA's showing that all eight grievances were filed more than 30 days after the occurrence or discovery of the grievance, resulting in forfeiture of the claims under section 19.5 and leaving "nothing left to arbitrate."

Having failed to dispute or contravene VTA's showing in the trial court regarding the timing of the eight grievances, Local 265 may not now invoke the existence of a factual dispute. (*People v. Romero* (2008) 44 Cal.4th 386, 411 [" ' "[A]s a general rule, 'the failure to object to errors committed at trial relieves the reviewing court of the obligation to consider those errors on appeal.' " ' "].) Moreover, whether reviewed de novo or under the substantial evidence standard, Local 265 has not demonstrated that the trial court's finding (that VTA demonstrated the section 19 grievances were not timely filed in accordance with the CBA grievance provisions) was erroneous or lacked support in the record. Insofar as the court sat as a trier of fact, weighing the declarations and documentary evidence to decide the existence of any fact necessary to VTA's defense against the petition to compel arbitration (*Engalla, supra,* 15 Cal.4th at p. 972), uncontroverted evidence supports the court's finding. To the extent that Local 265 argues the documentary evidence was undisputed and this court is not bound by the trial court's ruling (*Mendoza, supra,* 75 Cal.App.5th at p. 765), we conclude on independent review that the evidence in the record—limited to the

_____

and to statements in the copies of the hearing decisions reflecting VTA's claims at the initial hearing.

declarations in support and in opposition to the petition—supports the trial court's determination.

The question remains whether it was the trial court's province to make that predicate finding and apply it to the language of the CBA to determine arbitrability. Having carefully considered both the federal and state precedents cited by Local 265 in support of its argument, we agree with VTA that those cases do not support the proposition Local 265 advances.

As an initial matter, the union frames the issue in terms of waiver under section 1281.2, arguing that courts have held that failure to timely file a grievance under a collective bargaining agreement does not result in waiver. This argument conflates the question of *waiver* of the contractual right to arbitration under section 1281.2, subdivision (a) with that of *arbitrability* under the terms of the labor agreement at issue.

The possibility of waiver arises only if the controversy is arbitrable, that is "an agreement to arbitrate the controversy exists." (§ 1281.2.) Despite establishing arbitrability, "a party may, as a result of its litigation conduct, lose its right to compel arbitration" on grounds including waiver, forfeiture, or estoppel. (*Quach*, *supra*, 16 Cal.5th at p. 583.) To establish waiver of the right to compel arbitration, "the party opposing enforcement of [the] contractual agreement must prove by clear and convincing evidence that the waiving party knew of the contractual right and intentionally relinquished or abandoned it." (*Id*. at p. 584.)

VTA's defense to the petition to compel arbitration was not based on a showing of relinquishment or abandonment of the right to arbitration by the union, but rather on enforcement of the language of the agreement. VTA relied on section 19.5, which provides that a party's failure to adhere to the time limit for filing a grievance "shall cause forfeiture of that party's case."

21

In other words, the question is not whether Local 265 waived its right to compel arbitration, but whether the CBA confers any right to compel arbitration when a party has failed to comply with the grievance procedures therein. A plain reading of the agreement demonstrates that it does not.

Section 20.2 of the CBA provides for submission to arbitration of "[a]ny grievance . . . which cannot be resolved in accordance with the provisions of [s]ection 18 or 19." Section 19.2 requires the filing of a grievance "within 30 calendar days after the occurrence or discovery of the alleged grievance." Section 19.5 titled "[v]iolation of [t]ime [l]imits" states: "The failure of either party to adhere to the time limitations in this [s]ection shall cause forfeiture of that party's case."

The language of these provisions unambiguously requires a party under section 20.2 to proceed "in accordance with the provisions" of section 19—including its time limits—in order to invoke the right to arbitration *and* states that failure to do so causes a forfeiture of the grievance case. By its terms, the CBA predicates arbitrability on proceeding in accordance with those procedures. Nothing in the contractual language suggests that this determination should be made by the arbitrator. (See *Amalgamated Transit*, *supra*, 107 Cal.App.4th at p. 684.)

The CBA explicitly imposes the consequence of forfeiture of that party's case for noncompliance with the grievance time limitations *and* limits the arbitration remedy to those who have proceeded in accordance with the processes set forth in section 19, including its time limitations. Therefore, we conclude on the facts of this case that an untimely grievance under the CBA is not arbitrable.

The cases relied on by the union do not suggest otherwise. Local 265 cites *Napa Association of Public Employees v. County of Napa* (1979) 98

22

Cal.App.3d 263 (*Napa*), abrogated in part by *Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307 (*Platt*), for the proposition that disputes as to time limits for bringing grievances are within the purview of the arbitrator. However, *Napa* is not authority for this point because the agreement at issue there did not address the arbitrability consequence, if any, of noncompliance with the timing requirement for bringing a grievance.

In *Napa*, memoranda of understanding between an employee union and the county established a grievance procedure, culminating in binding arbitration, which required the union to raise the grievance with the immediate supervisor within 10 workdays from the occurrence. (*Napa*, *supra*, 98 Cal.App.3d at pp. 266–267.) There is no indication the agreements contained any contracted for consequence (i.e., forfeiture) for failure to adhere to the timeline for reporting a grievance. The trial court in *Napa* denied the petition to compel arbitration on the ground that the employee union " 'waived its right to compel arbitration of the grievances . . . by failing to comply with the time limit within which the [agreements] require that grievances be commenced.' " (*Id*. at p. 268.)

The appellate court reversed. (*Napa*, *supra*, 98 Cal.App.3d at p. 271.) *Napa* distinguished cases providing that a party's failure to comply with the contractual time to demand arbitration waives that party's right to compel arbitration (*id*. at p. 268) from the issue on appeal, which was "not a contractual 'statute of limitations' with respect to the time within which arbitration must be demanded, but rather a time schedule with respect to the filing and processing of grievances." (*Id*. at p. 270.) As to the latter issue, the court cited out-of-state authority holding that compliance with the grievance period, and whether noncompliance should bar relief, "is a question for the arbitrator, and not for the court." (*Ibid*.) *Napa* explained that "[a] party who

23

asserts noncompliance with contractual time periods is of course free to make that assertion to an arbitrator, and we assume that the arbitrator will hold the parties to the essence of their bargain. It will be up to the arbitrator to decide whether the time limits have been complied with and, if not, what the consequences should be under the particular agreement which the parties negotiated. An arbitrator might, for example, decide as a matter of contract interpretation that the parties intended contractual time limitations to operate as a strict bar without regard to prejudice or mitigating factors, or he might consider such factors to be relevant in assessing the consequences of delay." (*Id*. at p. 271.) The court thus held that "the mere assertion of a party's failure to file a grievance within the time specified in the agreement . . . is not of itself sufficient to raise a question of 'waiver' within the meaning of [] section [1281.2], and that the trial court therefore erred in finding waiver as a matter of law." (*Ibid*.)

The reasoning in *Napa* is premised on the presumption that determining the consequence of noncompliance with the grievance procedures implicates the merits of the dispute and consideration of what the parties intended in agreeing to a stated time limit. (*Napa*, *supra*, 98 Cal.App.3d at p. 271.) This conclusion makes sense in the context of that case, where the agreement in *Napa* did not address failure to comply with the grievance timeline. Therefore, a failure to address consequences of noncompliance necessarily requires the arbitrator to interpret the agreement's provisions to ascertain the nature of the parties' bargain, including any intended consequence for noncompliance with procedural time limits. (See *ibid*.) Here, by contrast, the CBA provisions directly address noncompliance with the grievance procedure and impose a strict consequence—forfeiture of the party's grievance case. This distinction renders *Napa* inapposite as authority

for deferring the determination of noncompliance with grievance procedure to the arbitrator because, in our case, the parties to the CBA resolved the issue as part of the bargain for the agreement.[8]  Read together, sections 20.2 and 19.5 evince an intent to require timely grievances or face forfeiture of that party's case; if the case is forfeited under section 19.5, "there is nothing to arbitrate." (*Posner*, *supra*, 56 Cal.2d at p. 186.)  By its own terms, " ' "the arbitration clause cannot be interpreted to cover the dispute" ' " (*Amalgamated Transit*, *supra*, 107 Cal.App.4th at pp. 684–685) if the claim has been forfeited.

So, too, the union's reliance on United States Supreme Court cases *Howsam* and *John Wiley & Sons, Inc.* is misplaced.  *Howsam* and *John Wiley & Sons, Inc.* were decided under federal law.  Neither case stands for the proposition that determining arbitrability pursuant to the terms of an arbitration agreement is the province of the arbitrator.  As the Supreme Court explained in *Howsam*, courts typically decide "gateway" questions about arbitrability, though that principle does not hold in circumstances "where parties would likely expect that an arbitrator would decide the gateway matter." (*Howsam*, *supra*, 537 U.S. at p. 84.)  One such area, which

---

[8] The California Supreme Court's decision in *Platt* reiterated that the decision in *Napa* was limited to the question of failure to timely submit a labor grievance and should not be viewed as authority on the issue of contractual time limits to request arbitration. (*Platt*, *supra*, 6 Cal.4th at p. 317.)  *Platt* clarified that under California law, a contractual time limit for a party's demand for arbitration "is a condition precedent to the right to arbitration" (*id*. at p. 321) and in the absence of a legal excuse or contractual modification, failure to make the demand within that time precludes judicial enforcement of the arbitration provision (*ibid*.).  This effectuates a "waiver" within the meaning of section 1281.2, subdivision (a), understood in this arbitration context as "the loss or forfeiture of a right resulting from failure to perform a required act." (*Platt*, at p. 315.)

25

federal cases treat as "presumptively *not* for the judge, but for an arbitrator, to decide" are " ' "procedural" questions which grow out of the dispute and bear on its final disposition.' " (*Ibid.*) Here, however, the CBA predicates arbitration on parties proceeding in accordance with the procedural prerequisites, and the union did not materially dispute its procedural noncompliance in the trial court.

Furthermore, while courts applying federal law presume that " ' "procedural" questions' " including those pertaining to allegations of waiver or delay are for the arbitrator to decide (*Howsam*, *supra*, 537 U.S. at p. 84), that is not necessarily the case under California law. On the contrary, California courts have consistently distinguished between federal law and state law when construing waiver of the right to arbitration. (See, e.g., *Omar v. Ralphs Grocery Co.* (2004) 118 Cal.App.4th 955, 963 [explaining that "whether waiver claims are determined by the court or the arbitrator depends on whether the arbitration agreement is governed by federal or state law"]; *Desert Regional Medical Center, Inc. v. Miller* (2022) 87 Cal.App.5th 295, 314–315 [same].)

Our Supreme Court's recent analysis in *Quach* of a party's alleged waiver of the right to arbitration reflects this approach, with the court deciding whether the defendant had waived the right to arbitration and confirming that "[i]n ruling on a motion to compel arbitration, a court should separately evaluate each generally applicable state contract law defense raised by the party opposing arbitration." (*Quach*, *supra*, 16 Cal.5th at pp. 583–584.)

Given that "[t]he right to arbitration ultimately depends upon the terms of the collective bargaining agreement" (*Amalgamated Transit*, *supra*, 107 Cal.App.4th at p. 685), we conclude the trial court did not err in

26

construing and applying the language of the CBA to find that Local 265's failure to comply with the timing requirements of the grievance procedures forfeited those grievance claims.

## III. DISPOSITION

The trial court's October 17, 2024 order denying the petition to compel arbitration is affirmed. Respondent VTA is entitled to its reasonable costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____

             Danner, J.

WE CONCUR:

_____

Greenwood, P. J.

_____

Bromberg, J.

**H052725**
***Amalgamated Transit Union Local 265 v. Santa Clara Valley Transportation Authority***